## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW MAY and LINDA CHRISTIAN, individually, and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey corporation, and VOLKSWAGEN AG, a German corporation, | |
| Defendants. | |

## <u>INTRODUCTION</u>

1.      Plaintiffs Matthew May and Linda Christian ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any 2017-2020 Volkswagen equipped with an autonomous emergency braking system ("Class Vehicles") against Volkswagen Group of America, Inc., ("VWGoA") and Volkswagen AG ("VWAG") ( collectively "VW" or "Defendants").  The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to other matters based on an investigation by counsel.[1]

---

[1] Counsel's investigation includes an analysis of publicly available information, including consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

2.      Autonomous emergency braking ("AEB") systems are one of the most highly touted advancements in automobile safety.  As described by Consumer Reports, with AEB systems installed, "[t]he vehicle stops independently when it senses a crash is imminent to avoid a crash, or to reduce the severity of a crash that can't be avoided."[2]  There are both forward systems, which activate when the car is driving forward, and rear systems, which activate when the car is in reverse.[3]  When working properly, these systems can reduce the incidence of collisions and the resultant injuries.

3.      VW has heavily advertised the safety of its vehicles in the any model year 2017-2020 Volkswagen vehicle equipped with a forward AEB system ("Class Vehicles").  As described by VW, the "Front Assist" system "can alert the driver to help prevent accident involving pedestrians."[4]  VW further states:

> A radar sensor works within system limitations to help detect if a pedestrian is headed into the vehicle's path, and alerts the driver.  If the driver brakes too lightly in response to an audible and visual warning, the system can increase braking pressure to help avoid mitigate the impact of an impending collision.  If the driver does not brake at all, the car can apply the brakes automatically.[5]

4.      These systems are becoming standard on nearly every VW model, including the 2018 Volkswagen Tiguan.  As described in the 2018 Tiguan brochure, "if it senses that a collision is imminent, Autonomous Emergency

---

[2] https://www.consumerreports.org/car-safety/automatic-emergency-braking-guide/
[3] See id.
[4] http://newsroom.vw.com/vehicles/technology/helping-you-on-the-road/
[5] Id.

Braking (included in Front Assist) can support the driver with increased brake pressure or, under certain circumstances, it can apply the brakes automatically."[6]

6 | **Forward Collision Warning and Autonomous Emergency Braking with Pedestrian Monitoring (Front Assist)***

The available Forward Collision Warning (included in Front Assist) system can help monitor traffic and can alert you acoustically and visually to a potential front-end collision with the vehicle moving ahead. If it senses that a collision is imminent, Autonomous Emergency Braking (included in Front Assist) can support the driver with increased brake pressure or, under certain circumstances, it can apply the brakes automatically. The Pedestrian Monitoring (included in Front Assist) feature can warn of pedestrians crossing in front of the vehicle and under certain circumstances can brake automatically to help prevent or mitigate the outcome of a collision with a pedestrian if the driver doesn't respond adequately to the warnings.

5.      VW has also produced and widely distributed videos and commercials, discussed *infra*, describing how the Front Assist system can prevent a collision when another vehicle stops abruptly in front of the car or when a child darts into a street in front of the oncoming Volkswagen.

6.      In order to make sure these systems work as intended and advertised, VW must ensure that the component systems devised by various suppliers communicate properly.  For example, sensors on the front of the vehicle, produced by suppliers such as Robert Bosch LLC, must communicate information to the braking system and the ABS control module to apply the brakes, as well as the Transmission Control Unit to shift the car into the proper gear and with the Powertrain Control Unit (or Engine Control Unit) to limit power from the engine

---

[6] *See* http://www.auto-brochures.com/makes/Volkswagen/Tiguan/
VW_US%20Tiguan_2018-2.pdf

so that car is no longer propelled forward. Calibrating these systems to work together properly is the responsibility of VW.

7.    VW failed to inform Plaintiffs and members of the Class before or during the time of sale that the AEB systems in Class Vehicles have workmanship defects including but not limited to poor calibration of the software from multiple control modules such that they are prone to activating the brakes when there are no objects in front of the vehicle and failing to activate when there are persons or objects in motion in front of the vehicle due to miscommunications between all the systems involved in automatic braking, including the sensors, the brakes and the transmission (the "AEB System Defect" or "Defect"). The AEB System Defect prevents the Class Vehicles from behaving as designed and advertised in real-world driving conditions.

8.    As a result of the AEB System Defect, Class Vehicles are predisposed to suddenly slowing or stopping without driver input when there are no obstacles in front of the vehicle, potentially and paradoxically increasing the chances of a collision. Conversely, the AEB System can fail to activate in the exact situations it was designed to detect and mitigate, such as when a pedestrian or vehicle stops abruptly in front of the Class Vehicle.

9.    Based on pre-production testing, including design failure mode analysis, early warranty claims, replacement part orders, and consumer complaints to VW's authorized network of dealers, as well complaints to NHTSA, Defendants were aware of the AEB System Defect in the Class Vehicles as early as 2016. Despite being aware of the defect and numerous complaints, VW knowingly,

actively and affirmatively omitted and concealed the existence of the AEB System Defect in advertising and manuals to increase profits by selling additional Class Vehicles at inflated prices.

10.     On information and belief, the Class Vehicles utilize the same or substantially identical core vehicle components, and the AEB System Defect is the same for all Class Vehicles.

11.     For the Class Vehicles, VW offers a 6-year or 72,000 miles, whichever comes first, New Vehicle Limited Warranty and a 6-year or 72,000 miles, whichever comes first, Powertrain Limited Warranty.  Despite knowing of the Defect, VW has not disclosed the existence of the Defect and has not fixed the Defect, exposing Plaintiffs, Class Members, and members of the general public to unsafe driving conditions that often occur without warning.

12.     The alleged AEB System Defect was inherent in each Class Vehicles and was present in each Class Vehicle at the time of sale.

13.     VW knew about the AEB System Defect present in every Class Vehicle, along with the attendant safety problems, and concealed this information from Plaintiffs and Class Members at the time of sale, lease, repair, and thereafter. In fact, instead of repairing the Class Vehicles, VW has insisted that the vehicles are working as designed.

14.     If Plaintiffs and Class Members had known about the AEB System Defect at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

15.     As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the AEB System Defect, Plaintiff sand Class Members were harmed and suffered actual damages in that the Class Vehicles' are defective, that they overpaid for defective vehicles, and that the Class Vehicles' AEB Systems increase their chances of being involved in a collision by activating without cause and failing to activate when they should.

## PARTIES

### Plaintiff Matthew May

16.     Plaintiff Matthew May ("May") is a citizen of Virginia and resides in Arlington, Virginia.

17.     In or around March 2018, May leased a 2018 Volkswagen Tiguan equipped with an AEB System from Niello Volkswagen, an authorized Volkswagen dealership located in Sacramento, California.

18.     May leased his vehicle primarily for personal, family, or household use.

19.     Passenger safety and reliability were factors in May's decision to lease his vehicle. May reviewed advertisements for the Tiguan on the internet and the window sticker (the "Moroney" sticker), and test drove the 2018 Tiguan prior to his lease.  He also performed extensive online research regarding the vehicle, including viewing VW's website, which prominently advertised and discussed the Front Assist System.

20.    Had VW disclosed the AEB System Defect before May leased his vehicle, May would have seen such disclosures and been aware of them. Indeed, VW's misstatements and omissions were material to May. Like all members of the Class, May would not have leased his Class Vehicle, or would have paid less for the vehicle, had he known of the AEB System Defect.

21.    In addition, at the time May leased his vehicle, and in leasing the vehicle, May relied on representations from VW and its authorized dealership that the vehicle was fully functional, safe, durable, reliable, and/or the AEB System operated correctly and effectively.  In particular, May recalls viewing several VW commercials, including when the driver looked away and the vehicle stopped on its own when a child with a ball darted out into the street in front of it.  He also spoke with the salesperson at Niello Volkswagen, who assured him that the 2018 Tiguan was one of the safest cars on the road, that VW was a leader in car safety and took safety seriously, and that the Front Assist system utilized a radar sensor so that it could work in any weather or light condition.  May relied on these representations in purchasing the vehicle and, absent these representations, would not have leased the vehicle and/or would have paid less for it.

22.    Soon after May leased his vehicle, in or about late April 2018, he was driving near his home on a side street at dusk.  Without warning and with no objects in the road in front of him, the AEB system fully engaged, forcing his vehicle to a standstill.

23.    Similarly, in or about June 2018, May was driving his vehicle on a highway on-ramp attempting to get on the highway when the AEB system again fully engaged, forcing his vehicle to a standstill.

24.    May experienced the AEB System Defect in his vehicle frequently since his lease began, in that his vehicle would stop without his input despite the fact that there no objects or vehicles in the vicinity of his vehicle.

25.    On or about June 1, 2019, frustrated with the continuing issues with the AEB system, May took his vehicle to Pohanka Volkswagen, an authorized dealer of Volkswagen-branded vehicles located in Capitol Heights, Maryland. While the dealership performed a recall to the panoramic sunroof, he complained about the AEB system spontaneously forcing the vehicle to brake when there was nothing in the vicinity of his car.  His vehicle was examined, and he was told that the vehicle was "normal" and no repairs were performed to the AEB system.

26.    On or about November 7, 2019, May returned his vehicle to Pohanka Volkswagen and complained that the Front Assist system activated when there no object in sight on several occasions.  He was advised that a non-refundable diagnosis fee of $154 applied if they examined his vehicle and found an "non warrantable outside influence" is found.  After examining his car, they found no faults with the system and no repairs were performed to the AEB system.

27.    Subsequently, May continued to experience the AEB System Defect, with his vehicle frequently engaging the brakes despite the fact that there were no obstacles ahead.

28.    On or about January 15, 2020, May was driving his vehicle through an intersection in which he had the green light, when a vehicle crossed in front of the path in front of his car.  The AEB system in his vehicle did not engage at all and his vehicle was totaled in the resulting collision.

29.    Due to the AEB System Defect, Plaintiff May has lost the use of his vehicle, overpaid for a defective vehicle, and also suffered out of pocket costs related to the collision.

30.    At all times, Plaintiff May, like all Class Members, had attempted to drive his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Plaintiff Linda Christian**

31.    Plaintiff Linda Christian ("Christian") is a citizen of Massachusetts and resides in Salem, Massachusetts.

32.    Or or about October 1, 2018, Christian leased a 2018 Volkswagen Tiguan equipped with an AEB System from Kelly Volkswagen, an authorized Volkswagen dealership located in Danvers, Massachusetts.

33.    Christian leased her vehicle primarily for personal, family, or household use.

34.    Passenger safety and reliability were factors in Christian's decision to lease her vehicle. Christian reviewed advertisements for the Tiguan on the internet, particularly the information on VW's website, as well as the window sticker (the "Moroney sticker), and test drove a base trim model of the 2018 Tiguan prior to her lease.   During the test drive, the AEB system did not engage.

35.     Had VW disclosed the AEB System Defect before Christian leased her vehicle, Christian would have seen such disclosures and been aware of them. Indeed, VW's misstatements and omissions were material to Christian. Like all members of the Class, Christian would not have leased her Class Vehicle, or would have paid less for the vehicle, had she known of the AEB System Defect.

36.     In addition, at the time Christian leased her vehicle, and in leasing the vehicle, Christian relied on representations from VW and its authorized dealership that the vehicle was fully functional, safe, durable, reliable, and/or the AEB System operated correctly and effectively. Christian relied on these representations in purchasing the vehicle and, absent these representations, would not have leased the vehicle and/or would have paid less for it.

37.     About a week after she leased the vehicle, Christian was driving with her grandson in the vehicle when she went around a curve in the road at approximately 25 miles per hour. The AEB system activated despite the fact there were no obstacles in the road and her vehicle braked without reason. Christian managed to get the vehicle moving again but the vehicle soon stopped once more on its own, despite the lack of obstacles in front of the vehicle.

38.     Christian immediately took her vehicle to Kelly Volkswagen for repair, assuming that sensors in the AEB system were not properly calibrated. She was told instead that there was nothing wrong with her vehicle.

39.     Subsequently, Christian has continued to experience the AEB System Defect several times a week, and is often forced to pull over in order to get the system to disengage and/or turn off the system completely so she can continue

driving.  One notable incident occurred in or around November 2019, when her vehicle was nearly hit from behind by another car when the AEB system in her vehicle activated and forced the car to a near stop despite the fact that there were no obstacles in front of her vehicle.

40.    Christian has continued to complain to Kelly Volkswagen about the malfunctioning AEB system in her vehicle, which has been experienced by numerous drivers of her vehicle including her daughter and stepson, among others. Within the first six month of her lease, she complained to the dealership at least three times.  To date, she has not received any repairs to her vehicle for the AEB System Defect.

41.    Due to the AEB System Defect, Plaintiff Christian drives her vehicle less frequently because she fears having an accident and has overpaid for a defective vehicle.

42.    At all times, Plaintiff Christian, like all Class Members, has attempted to drive her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

43.    Plaintiffs and every other Class member's ascertainable losses include, but are not limited to, out-of-pocket losses by overpaying for the vehicles at the time of purchase and repair costs, decreased performance of the vehicles, loss of use of the vehicles, and diminished value of the vehicles. Accordingly, Plaintiffs bring claims individually and as a representatives of the Class.

**Defendants**

44.    Defendant VWGoA is a New Jersey corporation with its headquarters at 220 Ferdinand Porsche Drive, Herndon, Virginia 20171.

45.    Defendant VWGoA, through its various entities, markets, distributes, warranties, and sells Volkswagen branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States including California, Massachusetts, and Virginia.

46.    In order to sell vehicles to the general public, VWGoA enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiffs.  In return for the exclusive right to sell new Volkswagen branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties VWGoA provides directly to consumers who purchased new vehicles from the authorized dealerships.  All service and repair at an authorized dealership is completed according to VWGoA instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents.  Per the agreements between VWGoA and the authorized dealers, consumers such Plaintiff are able to receive services under VWGoA's issued warranty at dealer locations which are convenient to them. These agreements provide VWGoA with a significant amount of control over the actions of the authorized dealerships.

47.    VWGoA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

48.     Defendant Volkswagen AG is a German corporation headquartered in Wolfsburg, Germany.

49.     VWAG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Volkswagen and Audi-branded vehicles and parts for those vehicles worldwide, including the in the United States.

50.     VWAG is the parent corporation of VWGoA.  VWAG is also the parent corporation of the United States manufacturing facilities for Volkswagen and Audi-branded vehicles. For all its United States subsidiaries, including VWGoA, VWAG provides all the technical and information for the purpose of manufacturing, servicing, and repairing the Class Vehicles.

51.     The relationship between VWAG and VWGoA is governed by a General Distributor Agreement that gives VWAG the right to control nearly every aspect of VWGoA's operations—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

52.     VWAG and/or its agents installed and calibrated the sensors in the Class Vehicles.

## JURISDICTION AND VENUE

53.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  Personal jurisdiction over Defendants is proper because Defendant VWGoA is incorporated here, and all Defendants have purposefully availed themselves of the privilege of conducting business activities in New Jersey, and throughout the United States, including, but not limited to, designing, marketing,

warranting, distributing, and/or selling Class Vehicles and their components to Plaintiff and prospective class members.

54.     Members of the proposed Class, which includes citizens of all 50 states, or in the alternative, Virginia and Massachusetts, are citizens of states other than New Jersey, where VWGoA is incorporated, and Germany, where VWAG is headquartered and located.

55.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000 in value, exclusive of interest and costs.

56.     VW, through their business of distributing, warranting, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  As such, Defendants are deemed to reside in this district pursuant to 28 U.S.C. § 1391(c)-(d).

57.     In addition, a substantial part of the events or omissions giving rise to these claims took place in this District because VWGoA incorporated in this District.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

58.     Defendant VWAG is a manufacturer of vehicles sold by Defendant VWGoA under the Volkswagen brand throughout the United States. Defendant VWAG designed and manufactured the Class Vehicles, and Defendant VWGoA imported, distributed, marketed and/or sold the Class Vehicles in the United States. Defendant VWGoA also provides service and maintenance for the Class Vehicles through its extensive network of authorized dealers and service providers

nationwide, using information provided by VWAG.  VW has sold, directly or indirectly, though dealers and other retail outlets, hundreds of thousands of Class Vehicles in California, Massachusetts, and nationwide in total.  In 2018, VW had sales revenues of €37.7 billion in North American alone.[7]

59.     One of the newest pieces of technology in VW vehicles is Front Assist, an autonomous braking system which is supposed to warn the driver of an obstacle in the road and also engage the brakes independently if the driver fails to react.  This system is a part of other collision avoidance systems installed in Class Vehicle, which the goal of preventing or reduce the severity of an impact.

60.     As with other systems in a vehicle, the AEB system is run by a control module, built and programmed by the supplier.  This module is equipped with a proprietary algorithm which takes the data acquired from sensors, as well as other modules in the vehicle such as the transmission control module to determine the speed, acceleration, and distance for both the vehicle itself and the object ahead.

61.     In any given vehicle model, integration and calibration of the AEB system typically occurs near the end of the research and development process, so that the control module can be given final values for vehicle weight and configuration.  This is overseen by the vehicle manufacturer, often with assistance from suppliers' engineers.  Modules as provided by the supplier must be "tuned" both to achieve the desired goal of the vehicle manufacturer as well as to work with all the other modules in the vehicle.

---

[7] *See* https://www.volkswagenag.com/presence/investorrelation/publications/annual-reports/2019/volkswagen/en/Y_2018_e.pdf.

62.     Upon information and belief, VW's desired goal with the AEB systems in the Class Vehicle is collision avoidance, as opposed to merely reducing the severity of the impact.  As a result, VW has improperly tuned the AEB systems to fully apply the brakes when the system detects anything in front of the vehicle, regardless of its size or speed, so that the AEB activates unnecessarily early and with unnecessary force.  Moreover, the testing and validation procedures used by VW were insufficient to properly mimic real-world conditions, including actual driver reaction time.

63.     Despite this insufficient calibration and tuning process, VW has touted the improved safety of its vehicles which are equipped with Front Assist. For example, in a video, VW explains that Front Assist monitors the traffic and objects ahead of the vehicle with radar, with the AEB system engaging when the vehicle is going 3 miles per hour or higher when it detects an object and does not detect braking by the driver.[8]  As described by VW, the AEB system first applies some braking pressure, and then after a driver fails to react, applies the full braking force.  However, upon information and belief, the improper tuning and calibration means that the system does not allow drivers enough time to react before applying the full braking force of the vehicle and does not properly account for the size and speed of the object in front of the vehicle.

64.     In fact, VW's commercials often showcase exactly how fast the AEB system can react.  For example, one commercial for the 2016 Volkswagen Passat, a

---

[8] *See* Front Assist Knowing Your Vehicle, available at https://www.youtube.com/watch?v=fvVGPNGwpZE

16

father driving his daughter to school fails to notice a convertible cutting in front of his vehicle and slamming on the brakes.  The Volkswagen Passat, however, reacts instantly, stopping the car smoothly and preventing a collision.  The voiceover announces, "It brakes when you don't."[9]

65.    In another commercial which VW caused to displayed in major American television markets, a woman driving a 2018 Volkswagen Atlas is alerted to the appearance of a child darting in front of the vehicle while it is motion and the AEB system activates to stop the vehicle.



66.    These advertisements are just two of the many similar statements in press releases, brochures, websites, and commercials VW has caused to be

---

[9] *See* https://www.ispot.tv/ad/ACKN/2016-volkswagen-passat-dad-stop#

disseminated within the United States regarding the safety, reliability, and functionality of the AEB systems installed in Class Vehicles.

67.    In contrast to the glowing recommendations provided by VW in its advertisements, such as these videos, commercials, and brochures, the AEB systems in Class Vehicles activate without cause, startling drivers and potential causing collisions when their vehicles suddenly stop in the road.  Similarly, the AEB systems can fail to activate when they are most needed – when obstacles or pedestrians suddenly appear in front of a vehicle and the driver requires assistance to avoid or mitigate a collision.

68.    Upon information and belief, the AEB System Defect in Class Vehicles is due to the poor integration of software of the various modules which control the functions of the vehicle's systems, including the brakes, transmission, and powertrain components.  Each supplier may have different software and provide a different electronic control module and/or software for a vehicle component.  Integration of software and controls modules for system components is responsibility of the car's manufacturer, this case VW.

69.    VW is aware of the difficulties and problems in software integration. Last year, VW acknowledged that its average vehicle has "about 70 electronic control modules – basically standalone computers – running software from as many as 200 suppliers all of which have to be integrated by the company to make sure the vehicle operates correctly."[10]

---

[10] *See* Vellequette, Larry P., "VW's high-tech bombshell," Automotive News (Sept. 23, 2019) (available at https://www.autonews.com/suppliers/vws-high-tech-bombshell) (last visited July 8, 2020).

70.    VW further acknowledged that this was an ongoing problem with its vehicles and announced an initiative to reduce the 70 computers to just 3, running on the same kind of software.  As noted by Christian Senger, the then-Volkswagen Group board of management member overseeing software development, ***VW has not properly overseen integration of software in the past***.  As quoted in *Automotive News*:

> We are super expert in parts management. But we had more or less delegated the integration of software to our Tier 1 suppliers. So for us, a lot of software was just a black box – and we see that this doesn't work anymore.[11]

71.    Despite acknowledging the problems that exist generally and making a path for the development of future vehicles without these software integration issues, VW has not made fixing software integration issues in vehicles currently on the road a priority.  Instead, VW denies that any issues exist when Plaintiffs and members of the Class complain and are told that their vehicles are functioning normally.

72.    Indeed, the only autonomous emergency brake system testing performed by NHTSA simply requires that the system reduce the vehicle's speed by 9.8 mph when approaching a stationary vehicle at 25 mph in order to pass.[12] While noting that manufacturers may include some warnings in owners' manuals, tests by *Car and Driver* revealed a startingly variation in results even in the same

---

[11] *Id.*

[12] *See* Tingwall, Eric, "*We Crash Four Cars Repeatedly to Test the Latest Automatic Braking Safety Systems,*" Car and Driver (Nov. 5, 2018), available at https://www.caranddriver.com/features/a24511826/safety-features-automatic-braking-system-tested-explained/

car. "***Driving the same car toward the same target at the same speed multiple times often produces different results***. Sometimes the car executes a perfectly timed last-ditch panic stop. Other times it brakes late, or less forcefully, or even periodically fails to do anything at all."[13]

### The AEB System Defect Poses an Unreasonable Safety Hazard

73.    The AEB System Defect causes unsafe conditions in the Class Vehicles, including, but not limited to, causing the vehicles to stop without cause in the middle of the road, distracting drivers with unnecessary warnings when no obstacles exist,  and/or failing to engage the braking system at all when the obstacles do appear in front of the vehicles.  This safety risk increases the risk of collisions and/or fails to reduce the incidence and severity of collisions as the AEB system was designed to do.

74.    Complaints that Class Vehicles' owners and lessees filed with NHTSA demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendants' awareness of the problems with the AEB systems and how potentially dangerous the defect is for consumers. Attached hereto as **Exhibit A** is just a sampling of dozens safety-related complaints that describe the AEB System Defect in Class Vehicles (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Complaints* (July 8, 2020), http://www-  odi.nhtsa.dot.gov/complaints/).

---

[13] *Id*. (emphasis added).

75.     In fact, complaints were so prevalent about the AEB system malfunctions in Volkswagens, among other vehicles, that NHTSA has opened an investigation into AEB systems in general.[14]

76.     Also, complaints posted by consumers in internet forums demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Defendants' awareness of the problems with the AEB System and how potentially dangerous the defect is for consumers. These complaints are listed on **Exhibit B** attached hereto.

77.     The AEB System Defect poses an unreasonable safety risk for Class Members and other drivers and is a safety hazard to the general public and increases the risk of automobile accidents.

**VW Had Superior and Exclusive Knowledge of the AEB System Defect**

78.     VW had superior and exclusive knowledge of the AEB System Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class  Vehicles.

79.     Plaintiffs are informed and believe, and based thereon allege, that before Plaintiffs leased their Class Vehicles, and since at least 2012, VW knew about the AEB System Defect through sources not available to consumers, including the following: pre-release testing data; early consumer complaints about the AEB System Defect to Defendants' dealers who are their agents for vehicle

---

[14] *See* Foldy, Ben, "*As Automatic Braking Becomes More Common in Cars, So Do Driver Complaints*," The Wall Street Journal (Aug. 27, 2019), available at https://www.wsj.com/articles/as-automatic-brakes-become-common-so-do-driver-complaints-11566898205

repairs; warranty claims data related to the defect; aggregate data from VW dealers; consumer complaints to NHTSA and resulting notice from NHTSA; early consumer complaints on websites and internet forums; dealership repair orders; testing conducted in response to owner or lessee complaints; and other internal sources of aggregate information about the problem.

80.    Further, even prior to bringing the Class Vehicles to market, VW was cognizant of the difficulty in integrating the software of all systems required for the AEB systems to function as advertised.  As a result, despite producing commercials and brochures that overstate the effectiveness and functionality of its AEB systems, warnings in the owners' manuals for the Class Vehicles indicate that the AEB system are marginally functional at best.

81.    These warnings include that the Front Assist system "can issue unnecessary warnings in certain complex traffic situations, for example, at traffic islands" and that "[u]nder certain circumstances and complex traffic situations the Autonomous Emergency Braking function can perform unwanted braking maneuvers, like in construction sites."

82.    However, these warnings are issued are issued in owners' manuals made available to consumers after the vehicle purchase or lease and do not inform Plaintiffs and members of the Class that the AEB systems in the Class Vehicles will frequently engage without cause, jerking the vehicles to a stop and leaving the driver and passengers more suspectable to a collision from traffic.  Indeed, unlike many manufacturers, VW does not make its owners' manuals available online to consumers until after the vehicle is purchased.

22

83.    Moreover, these warnings do not inform Plaintiffs and members of the Class that their Class Vehicles may react differently each time it encounters the same situation, so that they are unable to even learn when their vehicle may malfunction. These warnings do not inform Plaintiffs and members of the Class that their AEB systems may stop the car unnecessarily when the car is performing such mundane tasks as exiting a driveway, driving a freeway, or moving around a curve in the road.

84.    The alleged AEB System Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

85.    The existence of the AEB System Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a WV vehicle that was equipped with an AEB system.  Had Plaintiffs and other Class Members known that the Class Vehicles had the AEB System Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.

86.    Reasonable consumers, like Plaintiffs, reasonably expect that a vehicle's AEB system will function in a manner that will not pose a safety hazard and is free from defects that actually interfere with its role as a safety feature and make the vehicle unsafe. Plaintiffs and Class Members further reasonably expect that VW will not sell or lease vehicles with known safety defects, such as the AEB System Defect, and will disclose any such defects to its consumers when it learns of them.  They did not expect VW to fail to disclose the AEB System Defect to them and to continually deny the existence of the defect.

## VW Has Actively Concealed the AEB System Defect

87. While VW has been fully aware of the AEB System Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease, repair, and thereafter. Specifically, VW failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

  a. any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the AEB systems;

  b. that the Class Vehicles, including their AEB systems, were not in good working order, were defective, and were not fit for their intended purposes; and

  c. that the Class Vehicles were defective, despite the fact that VW learned of such defects through alarming failure rates, customer complaints, and other internal sources, as early as 2016.

88. In fact, even before releasing the Class Vehicles on the market, VW knew about the AEB System Defect. Nevertheless, VW never disclosed the AEB System Defect to Class Members.

89. As a result of the AEB System Defect, VW and its authorized dealers were inundated with complaints regarding the AEB System Defect.

90. On information and belief, the VW has not made fixing the software issues which cause the AEB system malfunctions as described herein a priority, instead devoting significant resources to the software concerns of future vehicles.

91.    When consumers present the Class Vehicles to authorized VW dealers for repair of the AEB System Defect, rather than repair the problem under warranty, VW has instructed dealers to deny the AEB System Defect exists.

92.    To this day, VW still has not notified Plaintiffs and all Class Members that the Class Vehicles suffer from a systemic defect that causes the AEB systems to malfunction, to the detriment of the safety of drivers, passengers, and the general public.

## CLASS ACTION ALLEGATIONS

93.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class and Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

94.    The Class and Sub-Classes are defined  as:

**Class**: All individuals residing in the United States of America, including its territories, who purchased or leased any model year 2017-2020 Volkswagen vehicle equipped with a forward AEB system (the **"Class Vehicles"**).

**California Sub-Class**: All members of the Class who purchased or leased their Class Vehicles in the State of California.

**Massachusetts Sub-Class**: All members of the Class who purchased or leased their Class Vehicles in the State of Massachusetts.

95.    Excluded from the Class and Sub-Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal

representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

96.     There is a well-defined community of interest in the litigation and the Class and Sub-Class are readily ascertainable.

97.     Numerosity: Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, upon information and belief, hundreds of thousands of Class Vehicles have been sold in the United States.  As such, the number of prospective class members is great enough such that joinder is impracticable. The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court.  The prospective class members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various  states.

98.     Typicality: Plaintiffs' claims are typical of the claims of the all prospective class members in that Plaintiffs and the prospective class members purchased and leased a Class Vehicle designed, manufactured, and distributed by VW and equipped with forward AEB Systems. Plaintiffs and all prospective class members have been damaged by Defendants' misconduct in that the Class

Vehicles' suffer from the AEB System Defect and Class Members have incurred or will incur the cost of overpaying for the Class Vehicles and repairing or replacing Class Vehicles which have been damaged as a result of the AEB System Defect. Furthermore, the factual bases of VW's misconduct are common to all prospective class members and represent a common thread resulting in injury to all prospective class members.

99.    Commonality: There are numerous questions of law and fact common to Plaintiffs and the prospective class members that predominate over any question affecting individual prospective class members. These common legal and factual issues include the following:

      a.  Whether the Class Vehicles suffer from the AEB System Defect;

      b.  Whether the AEB System Defect constitutes an unreasonable safety risk;

      c.  Whether and when Defendants knew about the AEB System Defect;

      d.  Whether Defendants knew or reasonably should have known of the AEB System Defect before selling and leasing Class Vehicles to prospective class members;

      e.  Whether the AEB System Defect constitutes a material fact;

      f.  Whether Defendants have a duty to disclose its knowledge of the AEB System Defect to Plaintiffs and prospective class members;

g.  Whether Defendants breached the implied warranty of merchantability and their written warranties pursuant to the Magnusson-Moss Warranty Act;

h.  Whether Defendants violated the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;*

i.  Whether Defendants violated the California Business & Professions Code § 17200, *et seq*.;

j.  Whether Defendants violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1;

k.  Whether Defendants breached their written warranties;

l.  Whether Defendants breached the implied warranty of merchantability under Massachusetts law;

m. Whether Defendants violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws 93A, § 1, *et seq*.;

n.  Whether Plaintiff and the prospective class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent  injunction;

o.  Whether Defendants should be declared financially responsible for notifying all prospective class members of the AEB System Defect and for expenses of repairing the AEB System Defect;

p.  Whether Defendants are obligated to inform prospective class members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective headlight assemblies; and

q.  Whether damages, restitution, compulsory or other relief are
warranted.

100.  <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect
prospective class members' interests. Plaintiffs have retained attorneys experienced
in prosecuting class actions, including consumer and product defect class actions,
and Plaintiffs intend to prosecute this action vigorously.

101.  <u>Predominance and Superiority</u>: Plaintiffs and the Class Members have
all suffered and will continue to suffer harm and damages as a result of
Defendants' unlawful and wrongful conduct. A class action is superior to other
available methods for the fair and efficient adjudication of the controversy.  Absent
a class action, most Class Members would likely find the cost of  litigating their
claims prohibitively high and would therefore have no effective remedy at law.
Because of the relatively small size of the individual Class Members' claims, it is
likely that only a few Class Members could afford to seek legal redress for
Defendants' misconduct. Absent a class action, Class Members will continue to
incur damages, and Defendants' misconduct will continue without remedy.  Class
treatment of common questions of law and fact would also be a superior method to
multiple individual actions or piecemeal litigation in that class treatment will
conserve the resources of the courts and the litigants and will promote consistency
and efficiency of adjudication.

102.  In the alternative, the Class may be certified because:

a.  The prosecution of separate actions by the individual members of
the Class would create a risk of inconsistent or varying

29

adjudication with respect to individual Class Members, which

would establish incompatible standards of conduct for Defendant;

b.  the prosecution of separate actions by individual Class Members

would create a risk of adjudications with respect to them that

would, as a practical matter, be dispositive of the interests of other

Class Members not parties to the adjudications, or substantially

impair or impede their ability to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final and

injunctive relief with respect to the members of the Class as a

whole.

## FIRST CAUSE OF ACTION

**Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2303 et seq.**
**(By Plaintiffs on behalf of the Class against All Defendants)**

103.   Plaintiffs incorporate by reference all of the allegations contained in

the preceding paragraphs as though fully set forth herein.

104.   Plaintiffs May and Christian bring this cause of action on behalf of

themselves and the Class against all Defendants, or in the alternative Plaintiff May

brings this cause of action on behalf of the California Sub-Class and Plaintiff

Christian brings this cause of action on behalf of the Massachusetts Sub-Class.

105.   The Class Vehicles are a "consumer product" within the meaning of

the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

106.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

107.   Defendants are both a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

108.   VWGoA's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

109.   As set forth *supra* and incorporated by reference, VWGoA provided a 72,000 mile or 6 year, which ever is longer, New Vehicle Limited Warranty and Powertrain Limited Warranty to consumers.  These warranties were transferable to subsequent purchasers.

110.   VWGoA breached the express warranties by selling and leasing Class Vehicles with the AEB System Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, any system components that contribute to the AEB System Defect.

111.   VWGoA's breach of the express warranties has deprived the Plaintiffs and Class members of the benefit of their bargain by failing to provide Class Vehicles a functional AEB system.

112.   VW also provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not

fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.  The Class Vehicles would not pass without objection in the trade, are not adequately labeled and do not comfort the promises and affirmations on the label because the Class Vehicles have AEB systems which are prone to forcing the vehicle to brake when there are not obstacles ahead and also fail to engage as described when there are obstacles ahead.

113.    VW impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied, distributed, and/or sold by VW, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

114.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs Class Members with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.  Instead, the Class Vehicles are defective due to the AEB System Defect.

115.   The alleged AEB System Defect is inherent and was present in each Class Vehicle at the time of sale.

116.   Because of VW's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the AEB System Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that they overpaid for the Class Vehicles, the Class Vehicles suffer a diminution in value, and/or they were involved in collisions.

117.   Plaintiffs and members of the Class have had sufficient direct dealings with either VW or its agents (dealerships and technical support) to established privity of contract between VW, on one hand, and Plaintiffs and each of the other Class Members on the other hand.  Nonetheless, privity is not required her because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between VW and its distributors and dealers, and specifically, of VWGoA's express warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

118.   Affording VW a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, VW knew or was reckless in not knowing, of the lack of truth in their statements about safety, reliability, and functionality of the AEB system, of the material omissions concerning the

standard, quality or grade of the Class Vehicles and the presence of the AEB System Defect and associated safety risk, but failed to repair or replace the defective fuel system and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford VW additional reasonable opportunities to cure its breach of warranties is excused and thereby is deemed satisfied.

119.  Plaintiffs and members of the Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to VW and/or their agents.  Thus, Plaintiffs and members of the Class have not re-accepted their Class Vehicles by retaining them.

120.  Defendants was provided notice by letters dated May 29, 2020 and June 15, 2020 that Plaintiffs would pursue a claim under the MMWA on behalf of a class.

121.  The amount in controversy of each of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

122.  VW has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the AEB System Defect.

123.  As a direct and proximate cause of VW's breach of written and implied warranties, Plaintiffs and Class Members sustained and incurred damages

and other losses in an amount to be determined at trial. VW's conduct damaged

Plaintiffs and Class Members, who are entitled to recover actual damages,

consequential damages, specific performance, diminution in value, costs,

attorneys' fees, and/or other relief as appropriate.

### SECOND CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act,
California Civil Code § 1750, *et seq.*
(On Behalf of Plaintiff May and the California Sub-Class Against All
Defendants)**

124.   Plaintiff May incorporates by reference all of the allegations

contained in the preceding paragraphs as though fully set forth herein.

125.   Plaintiff May brings this cause of action on behalf of himself and the

California Sub-Class.

126.   Defendants are "persons" as defined by California Civil Code

§ 1761(c).

127.   Plaintiff May and California Sub-Class Members are "consumers"

within the meaning of California Civil Code § 1761(d) because they purchased

their Class Vehicles primarily for personal, family, or household use.

128.   By failing to disclose and concealing the AEB System Defect from

Plaintiff May and prospective Class Members, VW violated California Civil Code

§ 1770(a), as it represented that the Class Vehicles and their AEB Systems had

characteristics and benefits that they do not have and represented that the Class

Vehicles and AEB Systems were of a particular standard, quality, or grade when

they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

129.   VW's unfair and deceptive acts or practices occurred repeatedly in VW's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

130.   VW knew that the Class Vehicles and their AEB systems suffered from an inherent defect and/or were defectively incorporated into the Class Vehicles, and were not suitable for their intended use.

131.   Because of their reliance on VW's misstatements about the capabilities of the AEB Systems and omissions regarding the existence of the AEB System Defect, owners and/or lessees of the Class Vehicles, including Plaintiff May, suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the AEB System Defect, Plaintiff May and California Sub-Class Members were harmed and suffered actual damages in that they overpaid for the Class Vehicles, the Class Vehicles suffer a diminution in value, and/or they were involved in collisions.

132.   VW was under a duty to Plaintiff May and Class Members to disclose the AEB System Defect and/or the associated safety risk because:

a.   VW was in a superior position to know the true state of facts about the AEB System Defect in Class Vehicles;

b.   Plaintiff May and California Sub-Class Members could not reasonably have been expected to learn or discover that Class Vehicles had a dangerous safety defect until it manifested; and

  c. VW knew that Plaintiff May and California Sub-Class Members could not reasonably have been expected to learn of or discover the AEB System Defect.

133. In advertising and continuing to advertise that the Class Vehicles had functional AEB Systems, VW knowingly and intentionally misrepresented the true nature of the Class Vehicles.

134. In failing to disclose the AEB System Defect, VW knowingly and intentionally concealed material facts and breached its duty not to do so.

135. The facts VW misstated to, concealed from, or failed to disclose to Plaintiff May and California Sub-Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or whether to pay less for the Class Vehicles. Had Plaintiff May and California Sub-Class Members known that the Class Vehicles' possessed the AEB System Defect they would not have purchased or leased the Class Vehicles or would have paid less for them.

136. Plaintiff May and California Sub-Class Members are reasonable consumers who do not expect AEB Systems in their vehicle to frequently activate when there is no obstacle ahead or to completely fail to activate when there is an obstacle ahead. This is the reasonable and objective consumer expectation relating to a vehicle's AEB system.

137. Because of VW's conduct, Plaintiff May and California Sub-Class Members were harmed and suffered actual damages in that, on information and

belief, the Class Vehicles experienced and will continue to experience problems related to the AEB System Defect.

138.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff May and California Sub-Class Members suffered and will continue to suffer actual damages.

139.    Plaintiff May and the California Sub-Class are entitled to equitable relief.

140.    Plaintiff May provided VW with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) on May 29, 2020. VW did not provide appropriate relief for its violations of the CLRA within 30 days of notice. Accordingly, in additional to equitable relief, Plaintiff May seeks monetary, compensatory, and punitive damages.

## **THIRD CAUSE OF ACTION**

**Violation of California Business & Professions Code § 17200, *et seq.***
**(On Behalf of Plaintiff May and the California Sub-Class**
**Against All Defendants)**

141.    Plaintiff May incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

142.    Plaintiff May brings this cause of action on behalf of himself and the Class, or, alternatively, on behalf of the California Sub-Class.

143.    Because of their reliance on VW's misstatements and omissions, owners and/or lessees of the Class Vehicles, including Plaintiff May, members of the California Sub-Class suffered an ascertainable loss of money, property, and/or

value of their Class Vehicles. Additionally, because of the AEB System Defect, Plaintiff May and California Sub-Class Members were harmed and suffered actual damages in that that they overpaid for the Class Vehicles, the Class Vehicles suffer a diminution in value, and/or they were involved in collisions.

144.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

145.   Plaintiff May and California Sub-Class Members are reasonable consumers who do not expect their AEB systems to exhibit the symptoms of the AEB System Defect.

146.   VW knew the Class Vehicles and their AEB systems would be defective in workmanship and were not suitable for their intended use.

147.   In failing to disclose the AEB System Defect, VW has knowingly and intentionally concealed material facts and breached its duty not to do so.

148.   VW was under a duty to Plaintiff May and Class Members to disclose the defective nature of the Class Vehicles and their fuel systems because:

     a.  VW was in a superior position to know the true state of facts about the AEB System Defect in the Class Vehicles;

     b.  The AEB System Defect poses a safety risk to Plaintiff May and the California Sub-Class; and

     c.  VW actively concealed the defective nature of the Class Vehicles from Plaintiff May and the California Sub-Class.

149.    The facts May misstated, concealed from, or failed to disclose to Plaintiff May and California Sub-Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had they known of the AEB System Defect, Plaintiff May and the other California Sub-Class Members would have paid less for the Class Vehicles or would not have purchased or leased them at all.

150.    VW continued to deny and conceal the AEB System Defect in Class Vehicle even after Class Members began to report problems.

151.    VW's conduct was and is likely to deceive consumers.

152.    VW's acts, conduct, and practices were unlawful, in that they constituted:

     a.  Violations of California's Consumers Legal Remedies Act;

     b.  Violations of the Song-Beverly Consumer Warranty Act;

     c.  Violations of the Magnuson-Moss Warranty Act; and

     d.  Breach of Express Warranty under California Commercial Code § 2313.

153.    By its conduct, VW has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

154.    VW's unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

155.   As a direct and proximate result of VW's unfair and deceptive practices, Plaintiff May and California Sub-Class Members have suffered and will continue to suffer actual damages.

156.   VW has been unjustly enriched and should be required to make restitution to Plaintiff May and the California Sub-Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## FOURTH CAUSE OF ACTION

**Breach of Implied Warranties**
**Pursuant to Song-Beverly Consumer Warranty Act,**
**California Civil Code §§ 1792 and 1791.1, *et seq.***
**(On behalf of Plaintiff May and the California Sub-Class**
**Against All Defendants)**

157.   Plaintiff May incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

158.   Plaintiff May brings this cause of action against all Defendants on behalf of himself and the California Sub-Class.

159.   VW was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

160.   VW provided Plaintiff May and California Sub-Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable

and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.  The Class Vehicles would not pass without objection in the trade, are not adequately labeled and do not comfort the promises and affirmations on the label because the Class Vehicles have AEB systems which are prone to forcing the vehicle to brake when there are not obstacles ahead and also fail to engage as described when there are obstacles ahead.

161.    VW impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied, distributed, and/or sold by VW, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

162.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff May and California Sub-Class Members with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.  Instead, the Class Vehicles are defective due to the AEB System Defect.

163.   The alleged AEB System Defect is inherent and was present in each Class Vehicle at the time of sale.

164.   Because of VW's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the AEB System Defect, Plaintiff May and the California Class Members were harmed and suffered actual damages in that they overpaid for the Class Vehicles, the Class Vehicles suffer a diminution in value, and/or they were involved in collisions.

165.   VW's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty
### (By Plaintiff May on Behalf of the California Sub-Class Against Defendant VWGoA)

166.   Plaintiff May incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

167.   Plaintiff May brings this cause of action on behalf of himself and on behalf of the California Sub-class, against VWGoA.

168.   VWGoA provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, VWGoA's express warranty is an express warranty under California law.

169.    The AEB Systems were installed and calibrated in the Class Vehicles by VW and are covered by the express warranty.

170.    As set forth *supra* and incorporated by reference, VWGoA provided a 72,000 mile or 6 year, which ever is longer, New Vehicle Limited Warranty and Powertrain Limited Warranty to consumers.  These warranties were transferable to subsequent purchasers.

171.    VWGoA breached the express warranties by selling and leasing Class Vehicles with the AEB System Defect, requiring repair or replacement of the Class Vehicles within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Class Vehicles.

172.    Plaintiff May and members of the California Sub-Class have had sufficient direct dealings with either VWGoA or its agents (dealerships and technical support) to established privity of contract between VWGoA, on one hand, and Plaintiff May and each of the other California Sub-Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff May and each of the other California Sub-Class Members are intended third-party beneficiaries of contracts between VWGoA and its distributors and dealers, and specifically, of VWGoA's express warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

173.    Plaintiff May and members of the California Sub-Class were not required to notify VWGoA of the breach or were not required to do so because

44

affording VWGoA a reasonable opportunity to cure its breach of written warranty would have been futile. VWGoA was also on notice of the AEB System Defect from its own pre-production testing, from the early complaints and service requests it received from Class Members, from repairs and/or replacements of AEB system and other related system components, and from other internal sources.

174.    VWGoA was further provided notice of its breach of express warranties by Plaintiff May by letter dated May 29, 2020.  Plaintiff May also provided notice of express warranties when he took his Class Vehicle to Pohanka Volkswagen, a VWGoA-authorized provider of warranty repairs.  Despite these notices, VWGoA failed to cure the breach of express warranties within an adequate time.

175.    As a direct and proximate cause of VWGoA's breach of express warranties, Plaintiff May and the other California Sub-Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff May and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair to the AEB system, the related systems, and/or any collisions caused in whole or in part by the AEB System Defect.

176.    Plaintiff May and the other California Sub-Class Members are entitled to legal and equitable relief against VWGoA, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## SIXTH CAUSE OF ACTION

**Violation of The Massachusetts Consumer Protection Act ("MCPA")**
**Mass. Gen. Laws 93A, § 1, *et seq.***
**(By Plaintiff Christian on Behalf of the Massachusetts Sub-Class**
**Against All Defendants)**

177.    Plaintiff Linda Christian incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

178.    Plaintiff Christian brings this Count on behalf of herself and members of the Massachusetts Sub-Class.

179.    Plaintiff Christian, members of the Massachusetts Sub-Class, and Defendants are "persons" within the meaning of Mass. Gen. Laws 93A, § 1(a).

180.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § 1(b).

181.    The MCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws 93A, § 2(a).

182.    In the course of their business, Defendants violated the MCPA by mispresenting to Plaintiff Christian and members of the Massachusetts Sub-Class the true capabilities and functionality of the forward AEB Systems and failing to disclose that the Class Vehicles possessed the AEB System Defect and the corresponding safety risk.  Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Christian and the members of the Massachusetts Sub-Class the characteristics of the Class Vehicles and their forward AEB systems with respect to manufacture, workmanship, and functionality.

183.   Defendants committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the AEB System Defect and corresponding safety risk with the intent that Plaintiff Christian and members of the Massachusetts Sub-Class would rely upon their misrepresentations and omissions in connection with the sale and/or advertisement of Class Vehicles.

184.   Defendants violated the MCPA by: (i) representing that the Class Vehicles have characteristics, uses, benefits, or qualities they do not have; (ii) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and/or (iii) advertising the Class Vehicles with the intent not to sell them as advertised.

185.   Defendants intended that Plaintiff Christian and members of the Massachusetts Sub-Class would, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characteristics and material omissions concerning the quality and functionality of the forward AEB system in Class Vehicles, with respect to their manufacture, workmanship, and the information in the owner's manuals.

186.   Information regarding the AEB System Defect as described herein is material to consumers in that the Defect results in overpayment for a defective vehicle and poses a safety risk.

187.    Defendants failed to disclose and omitted the existence of the AEB System Defect in the Class Vehicles. Defendants' omissions caused Plaintiff Christian and the members of the Massachusetts Sub-Class to be unaware at the time of their purchase of their Class Vehicles that the AEB System Defect and its corresponding safety risk existed.

188.    Defendants owed a duty to disclose the material fact that the Class Vehicles contained the AEB System Defect to Plaintiff Christian and members of the Massachusetts Sub-Class, but failed to do so.  Defendants had a duty to disclose the existence of the AEB System Defect and its corresponding safety risk due to their superior and exclusive knowledge gained through pre-production testing, early consumer and dealer complaints, aggregate warranty data, and other sources not available to the general public.  Defendants had a further duty to disclose the AEB System Defect and its corresponding safety risk because, having volunteering to provide information to Plaintiff Christian and the members of the Massachusetts Sub-Class regarding the safety and operation of the AEB systems in Class Vehicles, they had a duty to disclose not just the partial truth, but the entire truth: that contrary to Defendant's representations, the Class Vehicles contained an AEB System Defect and corresponding safety risk and the Class Vehicles were prone to routinely and autonomously applying brakes in mundane, non-hazardous situations.

189.    Plaintiff Christian and members of the Massachusetts Sub-Class used Defendants' products and had business dealing with Defendant either directly or indirectly through Defendants' authorized dealers and other third parties, and were

the intended recipients of the Class Vehicles designed, manufactured, and distributed by Defendants.

190.  Defendants intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Christian and the members of the Massachusetts Sub-Class.

191.  Defendants intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Christian and members of the Massachusetts Sub-Class.

192.  Defendants' deceptive conduct was likely to deceive a reasonable consumer, and did in fact deceive reasonable consumers including Plaintiff Christian and members of the Massachusetts Sub-Class.

193.  Plaintiff Christian and members of the Massachusetts Sub-Class reasonably relied upon Defendants' material omissions and misrepresentations. They had no way of knowing that Defendants' representations were false and misleading. Plaintiff Christian and members of the Massachusetts Sub-Class did not (and could not) unravel Defendants' deception on their own.

194.  The facts misrepresented, concealed and omitted by Defendants, including the existence of the AEB System Defect, are material in that had Plaintiff Christian and members of the Massachusetts Sub-Class known of them, they would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles.

195.    Plaintiff Christian provided pre-suit notice to Defendants of her and the Massachusetts Sub-Class' claims under the MCPA by letter dated June 15, 2020.

196.    Plaintiff Christian and members of the Massachusetts Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' conduct.  Pursuant to Mass. Gen. Laws 93A, § 9, Plaintiff Christian and members of the Massachusetts Sub-Class seek monetary relief against Defendants measured as the greater of (a) actual damages in the amount to be determined at trial and (b) statutory damages in the amount of $25 for each member of the Massachusetts Sub-Class, as well as costs and attorneys' fees. Because Defendants' conduct was committed willfully and knowingly, Plaintiff Christian and the members of the Massachusetts Sub-Class are entitled to recover, for each members of the Massachusetts Sub-Class, up to three times actual damages, but no less than two times actual damages.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty
### (By Plaintiff Christian on Behalf of the Massachusetts Sub-Class Against All Defendants)

197.    Plaintiffs incorporate by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

198.    Plaintiff Linda Christian brings this cause of action on behalf of herself and members of the Massachusetts Sub-Class.

199.    VW was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles through their authorized agents for retail sales.

200.    VW provided Plaintiff Christian and Massachusetts Sub-Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.  The Class Vehicles would not pass without objection in the trade, are not adequately labeled and do not comfort the promises and affirmations on the label because the Class Vehicles have AEB systems which are prone to forcing the vehicle to brake when there are not obstacles ahead and also fail to engage as described when there are obstacles ahead.

201.    VW impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied, distributed, and/or sold by VW, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the

trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

202.    Contrary to the applicable implied warranties, the Class Vehicles and their fuel systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Christian and Massachusetts Sub-Class Members with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels,  Instead, the Class Vehicles are defective due to the AEB System Defect.

203.    Plaintiff Christian and members of the Massachusetts Sub-Class have had sufficient direct dealings with either VW or its agents (dealerships and technical support) to established privity of contract between VW, on one hand, and Plaintiff Christian and each of the other Massachusetts Sub-Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff May and each of the other Massachusetts Sub-Class Members are intended third-party beneficiaries of contracts between VW and its distributors and dealers, and specifically, of VW's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

204.    The alleged AEB System Defect is inherent and was present in each Class Vehicle at the time of sale.

205.   Because of VW's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the AEB System Defect, Plaintiff Christian and Massachusetts Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' are defective, that they overpaid for defective vehicles, and that the Class Vehicles' AEB Systems increase their chances of being involved in a collision by activating without cause and failing to activate when they should.

206.   VW's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Mass. Gen. Laws 106 §§2-314 and 2A-212.

207.   As a direct and proximate result of Defendants' breach of the implied warranties of merchantability, Plaintiff Christian and members of the Massachusetts Sub-Class have been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Breach of Express Warranty
### (By Plaintiff Christian on Behalf of the Massachusetts Sub-Class Against VWGoA)

208.   Plaintiff Christian incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

209.   Plaintiff Linda Christian brings this cause of action on behalf of herself and members of the Massachusetts Sub-Class.

210.   VWGoA provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, VWGoA's express warranty is an express warranty under Massachusetts law.

211.   The AEB systems were installed in the Class Vehicles by VW and are covered by the express warranty.

212.   As set forth *supra* and incorporated by reference, VWGoA provided a 72,000 mile or 6 year, which ever is longer, New Vehicle Limited Warranty and Powertrain Limited Warranty to consumers.  These warranties were transferable to subsequent purchasers.

213.   VWGoA breached the express warranties by selling and leasing Class Vehicles with the AEB System Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, the defective Class Vehicles.

214.   Plaintiff Christian and members of the Massachusetts Sub-Class have had sufficient direct dealings with either VWGoA or its agents (dealerships and technical support) to established privity of contract between VWGoA, on one hand, and Plaintiff Christian and each of the other Massachusetts Sub-Class Members on the other hand.  Nonetheless, privity is not required her because Plaintiff Christian and each of the other Massachusetts Sub-Class Members are intended third-party beneficiaries of contracts between VWGoA and its distributors and dealers, and specifically, of VWGoA's express warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights

under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

215.   Plaintiff Christian was not required to notify VWGoA of the breach or were not required to do so because affording VWGoA a reasonable opportunity to cure its breach of written warranty would have been futile. VWGoA was also on notice of the AEB System Defect from its own pre-production testing, from the early complaints and service requests it received from Class Members, from repairs and/or replacements of Class Vehicles, and from other internal sources.

216.   VWGoA was further provided notice of its breach of express warranties by Plaintiff Christian by letter dated June 15, 2020.  Plaintiff Farber also provided notice of express warranties when she took her Class Vehicle to her local VW dealership, a VW-authorized provided of warranty repairs.  Despite these notices, VWGoA failed to cure the breach of express warranties within an adequate time.

217.   As a direct and proximate cause of VWGoA's breach of express warranties, Plaintiff Christian and the Massachusetts Sub-Class have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Christian and the Massachusetts Sub-Class have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

218.   Plaintiff Christian and the Massachusetts Sub-Class Members seek full compensatory damages allowable by law, attorneys' fees, costs, punitive damages, restitution, the repair or replacement of all class vehicles, the refund of

money paid to own or lease all class, and appropriate equitable relief including injunctive relief, a declaratory judgment, and a court order enjoining VWGoA's wrongful acts and practices, and any other relief to which Plaintiff Christian and the Massachusetts Sub-Class Members may be entitled.

## NINTH CAUSE OF ACTION

### Unjust Enrichment
### (By Plaintiffs on Behalf of the Class, or Alternatively on behalf of the California and Massachusetts Sub-Class Against All Defendants)

219.    Plaintiffs incorporate by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

220.    Plaintiffs bring this cause of action on behalf of themselves and the Class, or alternatively, Plaintiff May brings this cause of action on behalf of himself and the California Sub-Class and Plaintiff Christian brings this cause of action on behalf of herself and the Massachusetts Sub-Class.

221.    As a direct and proximate result of VW's misrepresentations about the AEB System and its functionality and safety of the Class Vehicles and failure to disclose known defects, VW has profited through the sale and lease of the Class Vehicles.  Although these vehicles are purchased through VW's agents, the money from the vehicle sales flows directly back to VW.

222.    As a result of its wrongful acts, concealments, and omissions of the defect in its Class Vehicles, as set forth above, VW charged higher price for their vehicles than the vehicles' true value.  Plaintiffs and members of the Class paid that higher price for their vehicles to VW's authorized distributors and dealers,

which are in VW's control.  VW also reaps huge profits from the sale of its vehicles through its authorized distributors and dealers, with sales revenues of €37.7 billion in North America alone.

223.    Additionally, as a direct and proximate result of VW's failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon VW.

224.    VW has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to VW's profits when said money should have remained with Plaintiffs and Class Members.

225.    As a result of the VW's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## **RELIEF REQUESTED**

226.    Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

a.    An order certifying the proposed Class and Sub-Classes, designating Plaintiffs May and Christian representative of the Class, and designating the undersigned as Class Counsel;

b.    A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class

Vehicles and the existence of the AEB System Defect, including the need for repairs;

c.  An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling VW to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

d.  A declaration requiring Defendants to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

e.  An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial.

f.  Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

g.  Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

h.  A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

i.  An award of attorneys' fees and costs, as allowed by law;

j.  An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

k.  An award of attorneys' fees and costs pursuant to Mass. Gen. Laws 93A;

l.  An award of pre-judgment and post-judgment interest, as provided by law;

m.  Leave to amend the Complaint to conform to the evidence produced at trial; and

n.  Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

227.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues in this action so triable.

Respectfully submitted,

Dated: July 30, 2020

*/s/ Russell D. Paul*
Russell D. Paul (NJ Bar. No. 037411989)
Amey J. Park, Bar No. 070422014
Abigail J. Gertner (NJ Bar. No. 019632003)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600

Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
apark@bm.net
agertner@bm.net

Steven Weinmann (N.J. Bar No. 033111989)
Tarek H. Zohdy (*pro hac vice forthcoming*)
Cody R. Padgett (*pro hac vice forthcoming*)
Trisha Monesi (*pro hac vice forthcoming*)
**CAPSTONE LAW APC**
1875 Century Park East
Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310 943-0396
steven.weinmann@capstonelawyers.com
tarek.zohdy@capstonelawyers.com
cody.padgett@capstonelaywers.com
trisha.monesi@capstonelawyers.com

Michael K. Yarnoff
**THE KEHOE LAW FIRM**
2 Penn Center Plaza, Suite 1020
1500 JFK Boulevard
Philadelphia, Pennsylvania 19102
Tel: 215-792-6676
myarnoff@kehoelawfirm.com

*Attorneys for Plaintiff and the Proposed Class and Subclass*

## EXHIBIT A

The following are examples of complaints submitted to NHTSA that describe the AEB System Defect in Class Vehicles:

1. NHTSA/ODI ID: 11110813

**DATE OF INCIDENT:**         **July 3, 2018**

**DATE COMPLAINT FILED:**         **July 11, 2018**

**NHTSA/ODI ID:**         **11110813**

**VEHICLE:**         **Volkswagen Atlas 2018**

SUMMARY: AUTOMATIC BRAKING SYSTEM IS FAULTY. WHEN I PULL OUT OF DRIVEWAYS OR PARKING LOTS THE SENSORS ARE ACTIVATING AND THE MANEUVER BRAKING IS APPLIED AND THE CAR COMES TO AN ABRUBT STOP IN THE MIDDLE OF THE ROAD. EVERYTIME THIS HAS OCCURRED THERE HAS NOT BEEN AN OBJECT OR CAR PRESENT. THIS SYSTEM IS FAULTY AND DANGEROUS. I HAVE 3 CHILDREN IN THE BACK SEAT AND THIS MAKES ME VERY CONCERNED FOR THEIR SAFETY WHEN I DRIVE THIS VEHICLE. VW SERVICE IS LOOKING INTO THE ISSUE AND HAVE GIVEN ME A LOANER ATLAS THAT IS DOING THE EXACT SAME THING. I HAVE VIDEO OF THE ISSUE OCCURING.

2. NHTSA/ODI ID:         11112054

**DATE OF INCIDENT:**         **July 15, 2018**

**DATE COMPLAINT FILED:**         **July 17, 2018**

**NHTSA/ODI ID:**         **11112054**

**VEHICLE:**         **Volkswagen GTI 2018**

**SUMMARY:** THE "FRONT ASSIST" AUTOMATIC FORWARD COLLISION WARNING AND BRAKING SYSTEM RANDOMLY ACTIVATES WHEN DRIVING, BRAKING THE CAR WHEN THERE IS NOTHING TO

TRIGGER IT. (THIS IS OCCURRING EVEN ON EMPTY ROADS WITH NO OTHER VEHICLES IN SIGHT) THE LAST OCCURRENCE WAS ON AN EMPTY 4-LANE SUBURBAN STREET. I WAS IN THE MIDDLE OF A GENTLE CURVE IN THE ROAD WHEN THE WARNING SOUND ACTIVATED AND THE CAR BRAKED.

3.    NHTSA/ODI ID:                    11113195

**DATE OF INCIDENT:        July 23, 2018**

**DATE COMPLAINT FILED:        July 23, 2018**

**NHTSA/ODI ID:                11113195**

**VEHICLE:                Volkswagen Atlas 2018**

**SUMMARY:**  I?M CONTACTING YOU WITH AN ISSUE THAT NEEDS IMMEDIATE ATTENTION. THERE IS A SERIOUS DEFECT WITH THE VW ATLAS WE LEASED 2 MONTHS AGO. THE AUTOMATIC BRAKING SYSTEM DEPLOYS AT UNEXPECTED AND INAPPROPRIATE TIMES PRODUCING A LIFE THREATENING SITUATION.

THE AUTOMATIC BRAKING SYSTEM HAS ACTIVATED, DANGEROUSLY AND INAPPROPRIATELY, SEVERAL TIMES, USUALLY WHEN PULLING OUT OF A DRIVEWAY AND ATTEMPTING TO ENTER A LANE. ALTHOUGH THERE IS NO OBSTRUCTION OR RISK OF COLLISION, THE CAR SENSES THE INSIGNIFICANT CHANGE IN SLOPE FROM DRIVEWAY TO ROAD AND SLAMS ON THE BRAKES CAUSING THE DRIVER TO LOSE ALL CONTROL. THE CAR IS THEN STALLED IN THE MIDDLE OF ONCOMING TRAFFIC.

RECENTLY, MY WIFE AND TWO CHILDREN PULLED OUT OF THE DRIVEWAY OF OUR LOCAL SUPERMARKET AND MADE A LEFT TURN. THE AUTOMATIC BREAKING SYSTEM WAS ACTIVATED AND SHE WAS LEFT STALLED IN THE MIDDLE OF ONCOMING TRAFFIC. ANOTHER DRIVER BARELY AVOIDED COLLIDING INTO OUR REAR SIDE DOOR WHERE OUR 3 YEAR OLD SON?S CAR SEAT IS LOCATED.

WE HAVE TAKEN THIS ISSUE TO OUR LOCAL DEALERSHIP AND THEY CHECKED THE SYSTEM, AND TOLD US ?IT IS PERFORMING AS THE MANUFACTURE INTENDED IT TO?. THIS IS A SERIOUS DESIGN ISSUE AND ITS ONLY A MATTER OF TIME BEFORE IT RESULTS IN A MAJOR ACCIDENT AND I CAN ONLY PRAY THAT MY YOUNG CHILDREN ARENA?T MAIMED OR KILLED.

THE VW SERVICE PEOPLE HAVE SHOWN US A COMPLICATED WAY TO TURN OFF THE AUTOMATIC BRAKING SYSTEM IN THE CAR, HOWEVER THIS NEEDS TO BE DONE EVERY TIME YOU START THE CAR.

I FEEL IT IS INEVITABLE THAT A BUSY MOTHER DOING CHORES WITH TWO TODDLERS WILL FORGET TO TURN OFF THE SYSTEM AT SOME POINT.

THIS MATTER NEEDS TO BE RESOLVED BEFORE DISABILITY OR LOSS OF LIFE OCCURS. THERE NEEDS TO BE A WAY TO FIX THE SYSTEM OR PERMANENTLY DISABLE IT. WE ASKED VW TO PERMANENTLY DISABLE THE SYSTEM BUT THEY DECLINED.

WE LOOK FORWARD TO YOUR PROMPT REPLY.

THANK YOU. [XXX]

INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).?*PM


4.    NHTSA/ODI ID:                    111197777


**DATE OF INCIDENT:          July 17, 2018**

**DATE COMPLAINT FILED:        August 13, 2018**

**NHTSA/ODI ID:                    111197777**

**VEHICLE:                         Volkswagen Atlas 2018**

**SUMMARY:**  MY SUV IS IN THE SHOP FOR STOPPING WHEN IT SHOULD NOT STOP. WHEN PULLING OUT OF

DRIVEWAYS. THE VEHICLE WILL APPLY THE AUTOMATIC BRAKING SYSTEM LEAVING ME AND THE SUVOUT IN THE MIDDLE OF TRAFFIC.

5.    NHTSA/ODI ID:              11327524

**DATE OF INCIDENT:        November 14, 2019**

**DATE COMPLAINT FILED:        June 6, 2020**

**NHTSA/ODI ID:            11327524**

**VEHICLE:                Volkswagen Passat 2017**

**SUMMARY:** PARK DISTANCE CONTROL WITH NO VEHICLES CLOSE WILL AUTOMATICALLY OPERATE, THIS THEN LEADS TO THE AUTOMATICA BRAKING SYSTEM WANTING TO STOP THE CAR. THIS BOTHERS ME AT 70MPH WITH NO CARS WITHIN 500 FEET.

6.    NHTSA/ODI ID:              11317062

**DATE OF INCIDENT:        March 9, 2020**

**DATE COMPLAINT FILED:        March 9, 2020**

**NHTSA/ODI ID:            11317062**

**VEHICLE:                Volkswagen Atlas 2019**

**SUMMARY:** AUTOMATIC BRAKING SYSTEM DEPLOYS WITHOUT CAUSE. SITUATION: DRIVING ON INTERSTATE, NO CARS WITHIN HALF MILE, GOING 75 WITH ACC AND BREAKS AUTOMATICALLY SLAMMED ON WITH A COLLISSION WARNING. SENSOR AND CAR WERE CLEAN, NO CARS OR POSSIBLE IMPACTS. THIS HAS HAPPENED 3-4 TIMES.

ADDITIONAL SITUATIONS: ACC TURNS OFF BOTH ON INTERSTATE AND ON LONG HIGHWAY BRIDGE, SITUATIONS WERE DIFFERENT, BOTH DAY AND NIGHT TIME/ WITHOUT OTHER CARS AND WITHOUT. ALL SITUATIONS HAD NO POSSIBLE CHANGE OF IMPACT. ACC WILL TURN OFF WHILE CAR IS GOING

50-70 MPH RANGE AND SUDDENLY BREAK, IN MIDDLE OF THE ROAD, WITHOUT ANY WARNING. DEALERSHIP RESPONDED "NOTHING IS PERFECT" THS HAS NOW HAPPENED ROUGHLY 7 TIMES, WITH NO ADVICE FROM THE DEALER OTHER THAN TO "SEE IF I CAN JUST TURN THE ASSISTANCE SYSTEMS OFF." THEY WERE NOT ABLE TO SEE MY CAR IMMEDATELY WHEN I TOOK IT IN AFTER THE BRAKING INCIDENT TODAY AND HAVE SCHEDULED ME FOR A LATER DATE.

7.    NHTSA/ODI ID:              11268081

**DATE OF INCIDENT:**         **October 12, 2019**

**DATE COMPLAINT FILED:**     **October 12, 2019**

**NHTSA/ODI ID:**             **11268081**

**VEHICLE:**                  **Volkswagen Passat 2018**

**SUMMARY:**                              THE AUTOMATIC EMERGENCY BRAKING (AEB) 'FEATURE' IN MY 2017 VW PASSAT ENGAGED THIS MORNING AT APROX 10:30AM MST, WHEN ACCELERATING ONTO AN EMPTY STREET, AFTER TURNING WESTBOUND ONTO 8TH AVENUE, FROM NORTHBOUND COLORADO BOULEVARD IN DENVER, COLORADO. BASED ON THE TIME OF DAY, THERE'S NO WAY SUNLIGHT COULD BE A FACTOR AS I WAS HEADED WEST AND IT WAS WELL BEFORE                                       NOON.

THE CAR PASSENGERS AND I WERE ALL VERY STARTLED BY THE DASHBOARD LIGHTING UP AND THE BRAKES AUTOMATICALLY ENGAGING SO SUDDENLY AND SEVERELY, WITH NO ROAD OBSTRUCTIONS. THIS IS THE SECOND OCCURRENCE OF THE AEB FEATURE ENGAGING FOR NO APPARENT REASON, I DON'T RECALL THE FIRST TIME SPECIFICS, OTHER THAN THE SUN WAS BEHIND THE VEHICLE (IT WAS AFTER 4PM, AND I WAS HEADED EASTBOUND)

I HAVE ZERO IDEA WHAT IS HAPPENING WITH MY VEHICLE AND THE AEB FEATURE ENGAGING

WITHOUT ANY VISIBLE ROAD OBSTRUCTIONS THIS AND THE PREVIOUS TIME. NOTE, HE BRAKE PEDAL WAS NOT DEPRESSED/ENGAGED DURING EITHER OCCURRENCE.
ALSO NOTE, THE AEB FEATURE HAS ENGAGED PREVIOUSLY, ACCURATELY, APPARENTLY AND REASONABLY FUNCTIONING AS DESIGNED.

8.    NHTSA/ODI ID:              11217259


**DATE OF INCIDENT:        June 11, 2018**

**DATE COMPLAINT FILED:        June 1, 2019**

**NHTSA/ODI ID:        11217259**

**VEHICLE:        Volkswagen Tiguan 2018**

**SUMMARY:**    VEHICLE ENGAGES AUTOMATIC BRAKING SYSTEM WITHOUT ANY PROMTING…NO OTHER VEHICLE ANYWHERE IN SIGHT. IT HAS HAPPENED ON A RURAL TWO LANE ROAD, WITH A FARM ON ONE SIDE AND WOODS ON THE OTHER AND HAS ALSO HAPPENED ON A 4 LANE ROAD WITHIN CITY LIMITS, BUT NO VEHICLE IN FRONT OF ME, BUT ONE TO THE REAR PASSENGER SIDE IN THE LAND HEADING IN THE SAME DIRECTION. EVERY TIME THIS HAPPENS IT BRINGS THE VEHICLE TO A COMPLETE STOP, REGARDLESS OF SPEED. I HAVE EXPERIENCED WHIPLASH ON SERVICE OCCAIONS, AS WELL AS MY HUSBAND AND MY 7 YEAR OLD DAUGHTER. THE AMOUNT OF FORCE IS SO VIOLENT THAT I WOULD IMAGINE IT IS EQUIVALENT TO BEING HIT BY ANOTHER VEHICLE. I HAD JUST PICKED UP TAKE-OUT ONCE WHEN THIS HAD HAPPENED, AND THE SALSA IN THE TAKEOUT BAG FLEW OFF OF THE BACK SEAT AND THE FORCE CAUSED THE LID TO COME OFF AND SALSA WAS ALL OVER THE 2ND ROW, FRONT ROW, AS WELL AS MYSELF AND WINDSHIELD TO PUT INTO PERSPECTIVE HOW FORCEFUL THIS IS. I FEAR THE DAY THAT IT ENGAGES AND A CAR IS BEHIND ME, BECAUSE IT WILL KILL SOMEONE. WE ONLY DRIVE THIS CAR NOW ONLY IF IT IS ABSOLUTELY NECESSARY AND WE CAN'T MAKE OTHER

ARRANGEMENTS.

9.    NHTSA/ODI ID:                11328322

**DATE OF INCIDENT:        June 10, 2020**

**DATE COMPLAINT FILED:        June 11, 2020**

**NHTSA/ODI ID:        11328322**

**VEHICLE:        Volkswagen Atlas 2019**

**SUMMARY:**    WHILE DRIVING AT LOW SPEEDS, EXITING A PARKING LOT WITH A DOWNWARD SLOPE TOWARDS A STREET, THE CARS AUTONOUS EMERGENCY BRAKING SYSTEM ACTIVATED, IMMEDIATELY CAUSING THE VEHICLE STOP UNEXPECTEDLY. NO OTHER CAR WAS IN FRONT OF THE VEHICLE, INDICATING THAT THE SYSTEM PERCEIVES THE ROAD AS AN OBSTRACLE. THE UNEXPECTED STOP CAUSED ANOTHER VEHICLE BEHIND ME TO NEARLY REAR-END MY VEHICLE. ADDITIONALLY, THEY AEB SYSTEM DID NOT ALLOW ME TO QUICKLY RESTART ACCELERATION, WHICH LEFT ME TEMPORARILY STRANDED FOR A COUPLE SECOND PERPENDICULAR TO THE STREET.

10.    NHTSA/ODI ID:                11065360

**DATE OF INCIDENT:        November 21, 2017**

**DATE COMPLAINT FILED:        January 26, 2018**

**NHTSA/ODI ID:        11065360**

**VEHICLE:        Volkswagen Passat**

**SUMMARY:**  I OWN A 2017 VOLKSWAGEN PASSAT SEL PREMIUM.

ONE OF MY PRIMARY CONCERNS IS THAT THE AUTONOMOUS EMERGENCY BRAKING SYSTEM DOES NOT FUNCTION ACCORDING TO PAGE 271 OF THE OWNER'S MANUAL, OR AS PROMOTED BY THEIR

DEALRS, AND IN TV COMMERCIALS.

I TOOK MY PASSAT TO TWO DEALERS, BOTH SUPPOSEDLY CHECKED IT AND SAID IT TESTED 100%

A WEEK LATER, THE CAR DID NOT SLOW AT ALL WHEN I WAS CLOSE A VEHICLE IN FRONT OF ME GOING 65 MILES AND HOUR AND IT SLAMMED ON ITS BRAKES. IF I HAD NOT BEEN PAYING ATTENTION, A SERIOUS ACCIDENT WOULD HAVE OCCURRED.

I WROTE A LETTER REGARDING MY CONCERNS TO MR. HINRICH WOEBCKEN, CEO OF VW OF AMERICA. THE RESPONSE FROM VW WAS THAT MY SYSTEM WORKS FINE ACCORDING TO THEIR DEALERS, AND THEY WILL DO NOTHING FURTHER FOR ME!

AFTER THAT, I DID SOME RESEARCH AND DISCOVERED THE RESULTS OF FRONT COLLISION PREVENTION TESTING THAT WAS DONE BY THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY. THEIR TESTS ON 2017 CARS INCLUDED THOSE OF OVER 20 MANUFACTURERS.

THERE ARE 3 DIFFERENT PARTS TO THE TEST:

FORWARD COLLISION WARNING (ON THE PASSAT THIS IS A TWO CAR SYMBOL IN THE INSTRUMENT CLUSTER)

LOW SPEED AUTO BRAKE (THIS IS FOR SPEED UNDER 12 MPH)

HIGH-SPEED AUTO BRAKE (THIS IS FOR SPEEDS OVER 25 MPH)

THE RESULTS OF THESE TESTS SHOW THAT ALL COMPARABLE MANUFACTURER'S SEDANS EITHER SCORED 2 OR 3 POINTS ON THE HIGH-SPEED AUTO BRAKE TEST. HOWEVER THE VW PASSAT SCORED "0" POINTS, AND WAS UNABLE BRAKE THE CAR OR REDUCE THE CAR SPEED AT ALL! THE 2017 VW TOUAREG ALSO FAILED THE HIGH- SPEED AUTO BRAKE PORTION OF THE TEST.

I FEEL THAT VW NEEDS TO INFORM OWNERS, AND

STOP ADVERTISING THAT THEIR CARS HAVE A FUNCTIONING HIGH-SPEED AUTO BRAKING, AS THEY DO NOT! THEY SHOULD QUICKLY COME UP WITH A FIX, AND RECALL ALL THE 2016 TO 2018 PASSATS, AND OTHER MODELS THAT HAVE THIS FAULTY SYSTEM!

DRIVERS HAVE A FALSE SENSE OF SECURITY FOR A SYSTEM THAT DOES NOT WORK!

## EXHIBIT B

The following are complaints relating to the AEB System Defect (spelling and grammar mistakes remain as found in the original) in Class Vehicles:

a)    **Forums.vwvortex.com**

i.    dragonpalm (July 7, 2019)[15]: I was pulling out of my garage today, like I do every day, and all of a sudden the Tiguan slammed on the brakes, a brake warning message showed up on the dashboard, and the e-brake was automatically engaged. My wife and I were freaked out! I thought I hit something so I got out to inspect but there was nothing in front of the car. There is a slight dip when I exit my garage and I think the front bottom sensor must have picked it up and thorugh I was going to hit the ground or something. Everty time I go out of the garage, the front sensors beep but it has never used the auto brake before. I'm glad the feature works but it was pretty scary.

Has anyone else had the automatic emergency brake engage falsely or in a real dangerous situation?

ii.    CTGeoff (July 9, 2019)[16]: Two times this has happened and both were complete unnecessary and both nearly caused an accident.

---

[15] Available at https://forums.vwvortex.com/showthread.php?9328157-Automatic-emergency-braking-is-scary!

[16] *Id.*

The most recent was the other day in a traffic jam on the highway. I was rolling slowly with traffic and my foot hovering over the brake and well aware of the distance to the car in front of me. The car in front of me gently tapped it's brakes but the gap was barely closing. I didn't apply my brakes because the car in front of him was clearly accelerating and the car in front of took their foot off the brakes to accelerate as well. In that split second the Tiguan screeched to a halt and the car behind me had to swerve to the left to avoid to rear-ending me.

The first time it occurred there was a car turning right from a normal back road. I was coasting and ready to accelerate as I usually would when they completed their turn from the road and there was plenty of room to gently turn around them if needed. Screeching halt again and the same issue with a car behind me having to slam their brakes and swerve as the stop was completely not needed.

I really like the safety feature and understand the importance of leaving it active but these two near-accidents in just three months were the closest calls I've had than in my 26+ years of driving. I'm debating turning it off.

    iii.       Smokeybeetleman (July 9, 2019)[17]: The whole system is flawed. This

---

[17] *Id.*

has happened to me a few times while pulling into the garage.

There was a time when it should have went off and didnt. Someone in front of me started going from a stop then stopped abruptly. I started to go and if I didnt stop quick I would have went into the back of them. Not one sensor/warning went off.

     iv.      mjonesjr8 (April 4, 2012)[18]: Last weekend the wife and I was cruising along with nothing front of us and the car slams on the brakes for no reason and the guy behind me almost hit me and probably though i was brake checking him.

He wasn't even that close thank goodness. This the 2nd time it has for no reason slammed on the brakes. Anyone else ever have this happen?

I guess I need to take it in and let the dealer check it out. Just strange it works perfect for months than out of the blue bam.

     v.      j604 (August 10, 2016)[19]: Anybody have issues with false front assist alerts? For the 3 months I've owned the car, I've had 3 false front assist alarms (but no brake applied). Today, with no car in front of me (open road), warning AND brakes kicked in. Unfortunately I haven't installed my dash cam yet, so I don't have it on video…I'm wondering if my license plate location is a possible source of the problem? It was installed by the dealership like that, and I assume I would have

---

[18] Available at https://forums.vwvortex.com/showthread.php?9107881-FRONT-ASSIST-almost-got-me-rear-ended-on-the-interstate-can-i-turn-it-off!

[19] Available at https://forums.vwvortex.com/showthread.php?8110049-Front-Assist-kicked-in-with-no-car-in-front-of-me

warnings if it was interfering with the sensors?

      vi.        mike723 (November 22, 2017)[20]: Does anyone have experience with Autonomous Braking – Front Assist on a 2016 or 2017 Passat?

Mine does not seem to work as outlined on page 271 of the owner's manual. I have only had it seemingly work once! A car in front of me stopped after being ¾ into a right turn onto a side street, my car's brakes jerked and I swerved to avoid an accident. My car does not provide audio warning, or indication on the cluster display or auto slowing / braking if I am traveling to close to a car in front of me.

I have watched several youtube videos and even the latest VW TV commercials that shows a Passat automatically showing and braking to avoid an accident!

This is from one of VW's web sites: Volkswagen's Front Assist system is somewhat of a two-in-one technology. The Forward Collision Warning aspect of the technology is designed to alert you, with acoustic and visual warnings, when there is the potential for a front-end collision. A sensor in the front of the vehicle will monitor the roadway ahead of you to warn you if you are approaching a vehicle too

---

[20] Available at https://forums.vwvortex.com/showthread.php?8931569-Autonomous-Braking-Front-Assist-on-2016-or-2017-Passat

quickly or if another critical situation with a forward-moving object is imminent. If you receive these warnings, you'll want to apply the brakes. But if you don't apply the brakes, or don't apply them with enough force, the Autonomous Emergency Braking technology can kick in. This will actually apply the brakes for you, slowing down the vehicle to either avoid the potential collision or minimize the damage that may occur.

The adaptive cruise control, lane keeping, park assist and blind spot all work, and I definitely have front assist turned on in the assitance menu!

    b)    **CarproblemZoo.com:**

i.    December 13, 2017[21]: I came to a full stop as I was about to exit a driveway. Since there were no vehicles approaching from either direction and there were no obstacles in front of me, I stated to pull out of the driveway when the autonomous emergency braking system suddenly and abruptly stopped my vehicle with no justification. This type of system failure can result in injury.

ii.    January 28, 2019[22]: The automatic emergency braking system keeps activating without reason, slamming on the brakes, when there are no obstacles in front of the vehicle. This happens even when �front assist� and �lane assist�

---

[21] Available at https://www.carproblemzoo.com/volkswagen/atlas/2018/service-brakes-problems.php.

[22] *Id.*

are switched off. During our trip from texas to arizona and back, this has happened more than 10 times. It always occurs when the cruise control is switched on, while in the left lane, passing a semi truck. Each time, the Atlas was clearly in our lane and the truck was definitely in its lane, not wandering over the lane divider. It has happened when on a straight away and also when passing a truck on a left curve. This is a significant safety hazard. If any vehicle had been close behind us when it activated, it would have slammed into the back of us.

iii.    July 4, 2019[23]:    The cars breaking assistance brings the car to a complete stop at any speed. It will break when nothing is around, when backing out of driveway, driving down freeway, and pulling out onto the road.

iv.    July 7, 2019[24]: My wife wasdriving down a residential street no cars in front or behind. The autonomous brakes activated and brought car to full stop for no reason.

---

[23] Available at https://www.carproblemzoo.com/volkswagen/tiguan/2019/service-brakes-problems.php

[24] Id.