# Exhibit A

2021 WL 5195788
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

BLAKE GEORGE, JOYCE FERFECKI,
MIGUEL ORTIZ, STUART JOLLY, and
LASZLO VAS, on behalf of themselves
and all others similarly situated, Plaintiffs,
v.
JAGUAR LAND ROVER NORTH
AMERICA LLC, Defendant.

Civ. No. 2:20-cv-17561 (WJM)
|
Filed 11/08/2021

OPINION

WILLIAM J. MARTINI, U.S.D.J.

*1 Plaintiffs Blake George, Joyce Ferfecki, Miguel Ortiz, and Stuart Jolly (collectively, "Plaintiffs") bring this putative class action on behalf of owners and lessees of certain models of Land Rover and Jaguar vehicles equipped with the InControl Touch Pro or InControl Touch Pro Duo infotainment systems. Alleging that the infotainment systems are defective, and that Defendant Jaguar Land Rover North America LLC ("Defendant") knowingly concealed this fact from consumers, Plaintiffs' First Amended Class Action Complaint ("FAC" or "Complaint") asserts the following eleven claims: breach of express warranty (Count 1); breach of implied warranty (Count 2); violation of the Magnuson-Moss Warranty Act (Count 3); unjust enrichment (Count 4); breach of the implied covenant of good faith and fair dealing (Count 5); violation of New Jersey's Consumer Fraud Act (Count 6); violation of Florida's Deceptive and Unfair Trade Practices Act (Count 7); violation of Georgia's Fair Business Practices Act (Count 8); violation of Michigan's Consumer Protection Act (Count 9); and violations of New York's Consumer Protection Act (Counts 10 and 11). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

This matter is now before the Court on Defendant's motion to dismiss the FAC in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a valid claim for relief. ECF No. 19. Plaintiffs opposed the motion, ECF No. 20, and Defendant replied, ECF No. 21. The Court did not hear oral argument. Fed. R. Civ. P. 78(b). For the reasons stated herein, Defendant's motion is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

Unless otherwise stated, the Court draws all facts from the FAC, ECF No. 10, and accepts them as true for purposes of resolving this motion.

**A. The InControl System and the Alleged Defect**

Defendant is a New Jersey limited liability company that manufactures, distributes, and services luxury vehicles equipped with technology known as the InControl Touch Pro or InControl Touch Pro Duo infotainment system (collectively, the "InControl System"). FAC ¶¶ 34-37. The InControl System acts as a centralized computer for drivers to control their vehicle's communication and entertainment functions, like the radio, handsfree calling, heating and air conditioning, navigation, and reverse cameras. *Id.* ¶¶ 2, 43. The only alleged differences between the InControl Touch Pro and InControl Touch Pro Duo are stylistic, *i.e.*, different screen sizes and different icons and fonts displayed on the user interface. *Id.* ¶ 48. They otherwise have the same or substantially similar software. *Id.* ¶ 12.

Plaintiffs, as the purchasers or lessors of certain models of Defendants' vehicles, assert that the InControl System installed in the following fourteen (14) separate "Class Vehicles" do not function as advertised and are defective:

*2 • Range Rover (2018-2020)

• Range Rover Sport (2018-2020)

• Range Rover Velar (2018-2020)

• Range Rover Evoque (2018-2020)

• Discovery (2018-2020)

• Discovery Sport (2018-2020)

• Land Rover Defender (2018-2020)

• Jaguar E-Pace (2018-2020)

- Jaguar F-Pace (2018-2020)

- Jaguar I-Pace (2018-2020)

- Jaguar F-Type (2018-2020)

- Jaguar XE (2018-2020)

- Jaguar XF (2018-2020)

- Jaguar XJ (2018-2020)

*Id.* ¶ 5. The defect allegedly manifests in a variety of ways during normal use of the vehicles. For instance, the InControl System regularly freezes, has reduced functions, refuses to respond to user input or startup altogether, or, most commonly, displays only a blank or black screen (collectively, the "InControl System Defect"). *Id.* ¶¶ 3, 53. Plaintiffs maintain that the audio and video errors become a dangerous distraction to drivers, and the inoperable HVAC, reverse cameras, and hands-free calling functions jeopardize the vehicles' safety and reliability. *Id.* ¶¶ 3, 55, 57.

### B. Defendant's Knowledge and Omissions

Plaintiffs allege that Defendant knew of the InControl System Defect from multiple sources since at least September of 2018 but proceeded to conceal the defect from Plaintiffs and other consumers. *Id.* ¶ 59. Those sources included pre-release testing data; consumer complaints made to Defendant, its authorized dealers, and the National Highway Traffic Safety Administration ("NHTSA"); consumer complaints posted on YouTube and car enthusiast websites; testing and investigations conducted in response to the complaints, resulting in Defendant issuing multiple Technical Service Bulletins ("TSBs"); and aggregate data concerning replacement part sales and warranty reimbursement claims. *Id.* ¶¶ 59-88.

Plaintiffs include in the FAC, as a sample of the universe of complaints made, the text of ten (10) consumer grievances posted to the NHTSA's website by Class Vehicle owners from March of 2017 to March of 2020. *Id.* ¶ 77. Plaintiffs also include the text of at least twenty (20) complaints posted online in car enthusiast forums between February of 2018 and February of 2020 detailing issues with the Jaguar and Land Rover infotainment systems. *Id.* ¶ 85. As to the TSBs, Defendant issued at least five TSBs between August of 2018 and November of 2019 addressing the functionality of the InControl Systems in Jaguars and Land Rovers; describing how the Systems "may not function as expected" and may be "inoperative"; and indicating that the defect was a uniform one, common across both Jaguars and Land Rovers. *Id.* ¶¶ 61-65.

Despite its alleged knowledge, however, Defendant never disclosed the InControl System defect to consumers at the time of sale or lease. *Id.* at ¶¶ 89-91. Defendant continues to sell the Class Vehicles equipped with the defective InControl System and charges customers for repair attempts. *Id.* Defendant allegedly has not found a solution to the problem and either "replaces [the] defective [vehicle] parts with equally defective parts" or advises vehicle owners to wait for forthcoming "software updates" to fix the issues. *Id.* ¶ 58.

### C. Plaintiffs

**\*3** Each of the named Plaintiffs purchased or leased a Class Vehicle with an allegedly defective InControl System. *Id.* ¶ 10-33. Plaintiffs seek to represent a nationwide class for all purchasers of a "2018-2020 Jaguar or Land Rover equipped with the InControl Touch Pro or InControl Touch Pro Duo infotainment system," as well as subclasses for New Jersey, Michigan, Georgia, Florida, and New York—the states in which the named Plaintiffs either reside or purchased their Class Vehicles. *Id.* ¶ 106.

#### 1. Michigan: Blake George

Plaintiff Blake George ("George") purchased a 2019 Land Rover Range Rover equipped with an InControl Touch Pro Duo infotainment system in September of 2018 from an authorized Land Rover dealer in Michigan. *Id.* ¶ 10. In November of 2018, when the vehicle had about 2,000 miles, the InControl System began to randomly freeze, black out, and shut off when George would start or drive his vehicle, requiring him to pull over and turn the car off to reset the system. *Id.* ¶ 12. The InControl System has continued to malfunction this way almost every time he starts his vehicle, even after numerous software updates and the most recent service on November 10, 2020. *Id.* When George took his car to a Land Rover authorized dealer for repair, the dealer allegedly never disclosed this was a "systemic defect in the Class Vehicles" that may continue to manifest. *Id.* ¶ 13.

### 2. New Jersey: Joyce Ferfecki

Plaintiff Joyce Ferfecki ("Ferfecki") purchased a 2019 Range Rover Sport HSE equipped with an InControl Touch Pro Duo infotainment system in October of 2018 from an authorized Land Rover dealer in New Jersey. *Id.* ¶ 14. Despite the salesperson assuring her that problems with the infotainment systems in earlier vehicle models had been resolved, Ferfecki experienced problems within a day of her purchase when the InControl System screen went black and she had to pull over and call the dealer. *Id.* ¶¶ 15-16. The dealer instructed her to turn off the car, wait two minutes, and restart the engine, which temporarily resolved the issue. *Id.* ¶ 16. Ferfecki's vehicle continued to malfunction frequently, sometimes resulting in her being locked out of the vehicle. *Id.* ¶¶ 16-17. She complained about the issue multiple times to both the dealer and to Defendant directly and brought her car to be serviced several times for the issue. *Id.* ¶ 17. The dealer refused to replace any parts and never disclosed that the InControl System suffered from a systemic defect. *Id.* ¶¶ 17-18. Ferfecki's frustration with the issue eventually led her to trade in the vehicle. *Id.* ¶ 17.

### 3. Florida: Miguel Ortiz

Plaintiff Miguel Ortiz ("Ortiz") purchased a 2020 Land Rover Defender equipped with an InControl Touch Pro Duo infotainment system in November of 2020 from an authorized Land Rover dealer in Florida. *Id.* ¶ 19. He has repeatedly experienced the InControl System malfunctioning since the day he purchased the vehicle and has brought his vehicle to an authorized Land Rover dealer multiple times to address the issue. *Id.* ¶ 21. The dealer was unable to fix the problem and never disclosed that the InControl System suffered from a systemic defect. *Id.* ¶¶ 21-22.

### 4. Georgia: Stuart Jolly

Plaintiff Stuart Jolly ("Jolly") purchased a 2019 Jaguar F-Type equipped with an InControl Touch Pro Duo infotainment system in January of 2019 from an authorized Jaguar dealer in Georgia. *Id.* ¶ 23. The InControl System in Jolly's vehicle began malfunctioning ten days after he purchased the vehicle, when the navigation system audio shut off. *Id.* ¶ 25. Jolly has also experienced issues with the stereo malfunctioning, the system locking up, and the screen blacking out. *Id.* Although the dealer replaced the entire InControl System and provided a software update after Jolly brought his car in for service several times, the problems persisted, and the dealer never disclosed that the InControl System suffered from a systemic defect. *Id.* ¶¶ 25-26.

### 5. New York: Laszlo Vas

**\*4** Plaintiff Laszlo Vas ("Vas") leased a 2018 Range Rover Velar equipped with an InControl Touch Pro Duo infotainment system in April of 2018 from an authorized Land Rover dealer in New York. *Id.* ¶ 27. Despite the dealer stating that a recent software update had corrected any prior problems with the InControl System, Vas experienced problems with screen responsiveness and the navigation system shortly after he first leased the vehicle. *Id.* ¶ 28. He brought it to the dealer several times for service, but the dealer has been unable to fix the problem. *Id.* ¶ 29. The dealer never disclosed that the InControl System suffered from a systemic defect until recently, when the dealer mentioned there was a "glitch in the software" and that when it manifests, Vas should turn off the car, wait thirty seconds, and restart the engine to resolve the problem. *Id.* ¶ 30.

### D. Warranties

Plaintiffs allege their vehicles were covered by several warranties that Defendant breached by failing to properly repair or replace the defective InControl Systems, The warranties include the warranty of merchantability implied under state law, as well as the following express warranties: the Monroney window sticker representations, the New Vehicle Limited Warranty, and the Approved Certified Pre-Owned Warranty. *Id.* ¶¶ 95, 97.

At the time of sale, Class Vehicles were allegedly affixed with Monroney window stickers highlighting the InControl System as a selling feature. *Id.* ¶ 46. For example, the window sticker for a 2020 Range Rover Sport HSE identifies the Touch Pro Duo System as a "Comfort & Convenience" feature. *Id.* ¶¶ 15, 46-47. Plaintiffs claim the Monroney window stickers constitute an express warranty from Defendant. *Id.* ¶ 46.

The Class Vehicles were also allegedly covered by Defendant's New Vehicle Limited Warranty or its Approved Certified Pre-Owned Warranty (together, the "Limited

Warranties"). *Id.* ¶ 97. The New Vehicle Limited Warranty covers a Land Rover for four years from the date of purchase or lease, or up to 50,000 miles, and covers a Jaguar for five years from the date of purchase or lease, or up to 60,000 miles. *Id.* ¶ 101. Land Rover and Jaguar Approved Certified Pre-Owned vehicles are similarly Warranted for seven years from the date of purchase or lease or up 100,000 miles. *Id.* Under either of the Limited Warranties, "Defendant expressly [promised] to repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period." *Id.* ¶ 99. For example, the Limited Warranty for a 2020 Land Rover Discovery provides, in relevant part:

> JLR [Jaguar Land Rover] warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, repairs required to correct defects in factory-supplied materials or factory workmanship will be performed without charge upon presentment for service at a Land Rover retailer/authorized repairer; any component covered by this warranty found to be defective in materials or workmanship will be repaired, or replaced, without charge ....

*Id.* ¶ 100.

Lastly, the Class Vehicles were allegedly covered by an implied warranty of merchantability under which Defendant guaranteed the Class Vehicles to be in "a merchantable condition and fit for the ordinary purpose of providing safe and reliable transportation." *Id.* ¶ 134. Plaintiffs claim that Defendant breached this implied warranty when, knowing the InControl System was defective, it concealed the defect and continued to sell the Class Vehicles to consumers in an unmerchantable condition. *Id.* ¶ 135.

## II. LEGAL STANDARD

Based on the above, Plaintiffs filed the FAC that Defendant now seeks to dismiss under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

**\*5** In deciding a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotation marks omitted). The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This facial plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

All claims at issue in this case arise from the same series of general facts: that Plaintiffs allegedly suffered losses including out-of-pocket expenses, the cost of future repairs or replacements, and diminished vehicle performance and value due to the InControl System Defect; and that Defendant is allegedly liable for those losses based on breach of various warranties and failure to disclose the known defect as required under state consumer protection laws. As Defendant moves to dismiss the FAC in its entirety, the Court will address each of Plaintiffs' claims in turn.

### A. Choice of Law

At the outset of its moving brief, Defendant contends that the laws of the states where Plaintiffs are domiciled and purchased, leased, and serviced their vehicles—New Jersey, Florida, Georgia, Michigan, and New York—apply to Plaintiffs' common law claims for breaches of express and implied warranties (Counts 1 and 2), unjust enrichment (Count 4), and breach of the implied covenant of good faith and fair dealing (Count 5). Def. Br. at 20, ECF No. 19-1; Def. Reply at 4, ECF No. 21. Beyond this general contention, which Plaintiff argues is irrelevant to resolving the present

motion, Defendant conducts a choice-of-law analysis and identifies conflicting state laws only as they apply to the claim for breach of the implied warranty (Count 2). Since Plaintiffs do not contest that these states' laws apply, and since Defendant has not explained how Plaintiffs' home state laws conflict among the other common law claims, the Court need not undertake a lengthy choice-of-law analysis at this time. For purposes of resolving the present motion, the Court will apply New Jersey state law to all of Plaintiffs' common law claims other than their claim for breach of the implied warranty (Count 2), for which the Court will apply the laws of the states with the most significant relationship to the claim, *i.e.*, the laws of states where Plaintiffs are domiciled and purchased and serviced their vehicles. See *Feldman v. Mercedes-Benz USA, LLC*, No. 11-984 (WJM), 2012 WL 6596830, at *5 (D.N.J. Dec. 18, 2012).

### B. Breach of Express Warranty (Count 1)

Defendant advances two arguments as to why Plaintiffs' breach of express warranty claim must be dismissed. First, Defendant argues that "[t]he alleged defect is, if anything, a design defect" that falls outside the scope of the Limited Warranties. Def. Br. at 22, ECF No. 19-1. This Court is one of many in this District, however, that generally declines to apply a distinction between a defect in design and a defect in materials or workmanship at the pleadings stage of litigation. See *Fishman v. Gen. Elec. Co.*, No. 12-585 (WJM), 2014 WL 1628369, at *4, n.4 (D.N.J. Apr. 23, 2014); *Spera v. Samsung Elecs. Am. Inc.*, No. 12-05412 (WJM), 2014 WL 1334256, at *7 (D.N.J. Apr. 2, 2014); *see also Powell v. Subaru of Am., Inc.*, 502 F.Supp.3d 856, 883 (D.N.J. 2020) (collecting cases). Before discovery, Plaintiffs' characterization of the nature of the claim "is a matter of semantics." *Spera*, 2014 WL 1334256, at *7. "The fact that Plaintiffs' allegations could be construed as design defects is [therefore] insufficient to defeat these claims at the motion to dismiss stage." *Powell*, 502 F.Supp.3d at 883.

**\*6** Second, Defendant argues that "Plaintiffs do not allege details about their individual repair attempts" or their "alleged post-repair concerns" to adequately support the claim that the Limited Warranties failed their essential purpose. Def. Br. at 25-27, ECF No. 19-1. "Courts have recognized two circumstances where a warranty fails for its essential purpose: (1) where a plaintiff gives the defendant 'the opportunity to repair the defect but [is] refused service under the Warranty;' and (2) where 'after numerous attempts to repair, the product does not operate free of defects.' " *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-03095 (JHR), 2021 WL 1207791, at *14 (D.N.J. Mar. 31, 2021) (quoting *Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at *7 (D.N.J. Sept. 30, 2015)). Plaintiffs' allegations fall under the second scenario. Plaintiffs Ferfecki, Ortiz, Jolly, and Vas all allege that they brought their vehicles to an authorized dealer for service multiple times to address the various manifestations of the InControl Defect, which nonetheless persisted to manifest even after the repair attempts. FAC ¶¶ 17, 21, 25, 29. These Plaintiffs have therefore sufficiently pleaded failure of the Limited Warranties' essential purpose, *See, e.g.*, *Morris v. BMW of N. Am., LLC*, No. 13-4980 (JLL), 2014 WL 793550, at *10-11 (D.N.J. Feb. 26, 2014) ("[I]f Plaintiff succeeds in proving that the Navigation System contained a defect 'in materials or workmanship,' then BMW's failure to, *inter alia*, repair or replace the defective part(s) could constitute a breach of the [express warranty] Warranty."). Their claim for breach of express warranty may proceed.

In contrast, Plaintiff George does not expressly allege that he brought his vehicle to an authorized dealer for service multiple times to address the InControl Defect. Instead, he alleges that "after numerous updates and the most recent service which occurred on November 10, 2020, the InControl Defect manifests almost every time [his] vehicle is started." *Id.* ¶ 12. His allegations, as currently pleaded, are too tenuous to give rise to a plausible inference that he gave Defendant numerous opportunities to repair the InControl Defect. Accordingly, as he has not sufficiently pleaded failure of the Limited Warranties' essential purpose, his claim for breach of express warranty is dismissed without prejudice.

### C. Breach of the Implied Warranty of Merchantability (Count 2)

Defendant argues that Plaintiffs' breach of the implied warranty of merchantability must be dismissed for the following reasons: (1) as to Plaintiffs Ortiz, Jolly, and Vas for lack of vertical privity with Defendant under Florida, Georgia, and New York laws, and (2) as to all Plaintiffs for failure to adequately allege that the InControl Defect renders their vehicles unmerchantable. Def. Br. at 28, ECF No. 19-1.

Turning to Defendant's first argument, unlike New Jersey state law, Florida, Georgia, and New York state laws require plaintiffs asserting implied warranty claims to be in direct

vertical privity with a defendant. *See Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019); *Amin v. Mercedes-Benz USA*, LLC, 349 F. Supp. 3d 1338, 1356 (N.D. Ga. 2018); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021). However, courts in each of these states have articulated various exceptions to the vertical privity requirement. *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at *16 (D.N.J. May 8, 2017).

Under Florida law (applicable to Plaintiff Ortiz), privity of contract between the manufacturer and the ultimate consumer can be established when a plaintiff "purchased a vehicle from an authorized dealer who was an agent of [the manufacturer], [the plaintiff] was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the consumer, not the dealership." *Weiss*, 418 F. Supp. 3d at 1182; *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233 (S.D. Fla. 2015). Because the Complaint demonstrates that Plaintiffs were the "ultimate consumers" of Defendant's vehicles, and alleges, albeit minimally, that the authorized dealers from which they purchased and serviced their vehicles act as Defendant's agents, Defendant's motion to dismiss Plaintiff Ortiz's claim for lack of privity under Florida law is denied. *See In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *17 (denying defendants' motion to dismiss implied warranty claims where plaintiffs were the "ultimate users" of defendants' vehicles and therefore Florida's exception to the vertical privity requirement applied).

 *7 Similarly, under Georgia law (applicable to Plaintiff Jolly), "privity of contract between the manufacturer and ultimate consumer is established when the manufacturer extends an express warranty to the ultimate consumer. Once privity is established, a plaintiff may bring claims for breach of the implied warranties of merchantability and fitness for a particular purpose." *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011). As the Complaint sufficiently pleads that Defendant extended the Limited Warranties to Plaintiffs when they purchased their vehicles, Defendant's motion to dismiss Plaintiff Jolly's claim for lack of privity under Georgia law is also denied.

Lastly, under New York law (applicable to Plaintiff Vas), an exception to the privity requirement may be established where a plaintiff demonstrates that he or she is a third-party beneficiary of a contract between the manufacturer and the dealer. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016). The Complaint is devoid of allegations that support applying this exception here. Plaintiffs have not alleged, for example, the existence of any contracts between Defendant and its dealers or that they are intended third-party beneficiaries of those contracts, specifically Defendant's implied warranties. *Cf. In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *17 (denying defendants' motion to dismiss implied warranty claims "[b]ecause Plaintiffs have alleged that they are 'third-party beneficiaries of contracts between Subaru and its dealers, and specifically Subaru's implied warranties' "); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1180–81 (N.D. Cal. 2017) (denying defendants' motion to dismiss implied warranty claims under New York law where plaintiff plausibly alleged that she was an intended third-party beneficiary of the contracts between Nissan and its dealers). Consequently, the Court cannot find that New York's exception to the privity requirement is applicable here. As Plaintiff Vas has not otherwise established that he is in privity with Defendant, his implied warranty claim is dismissed without prejudice.

The Court now turns to Defendant's second argument: that the implied warranty claim must be dismissed as to all Plaintiffs for failure to adequately allege that the InControl Defect renders their vehicles unmerchantable. Def. Br. at 28, ECF No. 19-1.

"Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." *Greene v. BMW of N. Am.*, No. 11-04220 (WJM), 2013 WL 5287314, at *3 (D.N.J. Sept. 17, 2013) (citing *Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003)). The implied warranty does not provide for perfection, *id.*, nor does it "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2019 WL 3416902, at *13 (D.N.J. July 29, 2019) (quoting *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011)). "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Greene*, 2013

WL 5287314, at *3 (quoting *Green*, 2003 WL 21730592, at *6); *see also Schechter*, 2019 WL 3416902, at *13 ("[W]here a car can provide safe, reliable transportation[,] it is generally considered merchantable.").

According to the Complaint, the InControl Defect "can disable the vehicle," can result in "unexpected audio or video errors [that] can cause the driver to become distracted," and can cause "safety-related systems" like the back-up camera, HVAC controls, and hands-free calling to fail at times when their usage is crucial, *i.e.*, when driving "in climates where the lack of HVAC can be dangerous" or when driving in states like New Jersey where "a driver is not permitted to use a phone ... unless they are making calls 'hands-free.' " FAC ¶¶ 55, 136. Of the five named Plaintiffs, only George, Ferfecki and Vas detail their personal experiences with the InControl Defect in the Complaint. They allege that when the InControl Defect manifests while they are driving, they must pull over, turn the car off, and restart the ignition in order to reset the InControl System. *Id.* ¶¶ 12, 16, 30, Ferfecki alone alleges that the InControl Defect "sometimes result[ed] in her being locked out of her own car," though she does not allege any link between this issue and the InControl System. *Id.* ¶ 17. All five Plaintiffs continued driving their vehicles, except for Ferfecki who became "so fed up" that she traded in her car. *Id.*

*8 The Court is satisfied that these allegations sufficiently give rise to a plausible inference that the InControl Defect and its various manifestations pose a safety risk. While the safety risk alleged here may be of a different nature than the risks alleged in other vehicle-defect cases from this District, whether the InControl Defect posed enough of a safety risk to actually hamper the Class Vehicles' ability to provide safe, reliable transportation is ultimately a question of fact to be resolved at summary judgment or by a jury. See *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 981 (N.D. Cal. 2014) (Noting that "the safety risk in the instant case may not be of the same magnitude as those in some of the cases cited by Ford," but finding that "[a]t this juncture, ... the degree of safety risk posed by the alleged defective [MyFord Touch infotainment] system cannot be decided on a Rule 12(b)(6) motion."); *Cf. Schechter*, 2019 WL 3416902, at *14 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged that his vehicle's defective powertrain component caused, among other things, delayed acceleration and loss of power while driving); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *15 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged that his vehicle's defective timing chain system caused the motor to cease operation which "led to failure of the vehicle in general"); *Greene*, 2013 WL 5287314, at *3 (finding plaintiff sufficiently pleaded an implied warranty claim where he alleged his vehicle's tires were prone to "catastrophic failure," including popping and developing bubbles, after "mere months" of normal use). Accordingly, Plaintiffs George, Ferfecki, Ortiz, and Jolly's claim for breach of the implied warranty may proceed.

### D. Violation of the Magnuson-Moss Warranty Act (Count 3)

Defendant next seeks to dismiss Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301. The MMWA "provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation ... under a written warranty, [or] implied warranty.' " *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016) (quoting 15 U.S.C. § 2310(d)(1)). "MMWA claims are coextensive with underlying state law breach of warranty claims and are therefore dependent on, and derivative of, said state claims for survival in a motion to dismiss." *Guardavacarro v. Home Depot*, No. 16-8796 (FLW), 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. App'x 250, 254 (3d Cir. 2010) (finding that because the plaintiff's breach of express and implied warranty claims were dismissed, so too was his Magnuson-Moss claim).

Defendant argues that the MMWA claim must be dismissed for Plaintiffs' failure to exhaust the "informal dispute resolution process" available through the Better Business Bureau's BBB Auto Line arbitration program, a mechanism explicitly set forth in Defendant's Dispute Resolution Supplement publication. Def. Br. at 30, ECF No. 19-1. In that regard, the MMWA "encourage[s] warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). If the warrantor establishes such a procedure and "incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty," then "a class of consumers may not proceed in a class action except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the named plaintiffs (upon

notifying the defendant that they are named plaintiffs in a class action with respect to a warranty obligation) initially resort to such procedure." 15 U.S.C. § 2310(a)(3), Plaintiffs assert, among other things, that Defendant's argument is an affirmative defense that they need not negate in their Complaint. Pls. Opp'n Br. at 21-22, ECF No. 20.

The Court finds Plaintiffs' affirmative defense argument to be the more persuasive one at this juncture, where resolution of this issue is not clear from the face of the Complaint.[1] Defendant may revisit the question on summary judgment. Plaintiffs Ferfecki, Ortiz, and Jolly's MMWA claim, coextensive with their claims for breach of express and implied warranties (Counts 1 and 2), may therefore proceed past the dismissal stage. Because the Court dismissed Plaintiff George's breach of express warranty claim (Count 1), his MMWA claim may proceed coextensive with his surviving breach of implied warranty claim (Count 2). Because the Court dismissed Plaintiff Vas's breach of implied warranty claim (Count 2), his MMWA claim may proceed coextensive with his surviving breach of express warranty claim (Count 1).

### E. Unjust Enrichment (Count 4)

**\*9** Defendant argues that Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs did not have a direct relationship with Defendant. Def. Br. at 31, ECF No. 19-1. Rather, Plaintiffs did not purchase their Class Vehicles directly from Defendant, but from third-party dealerships, and therefore did not confer a benefit upon Defendant. *Id.*

"Courts in this district have previously found that [in] 'the majority of cases concerning claims similar to the ones asserted here—fraud and breach of warranty claims against a product manufacturer—a plaintiff may not maintain an unjust enrichment claim against the manufacturer if he did not purchase the product directly from the manufacturer.' " *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at \*30 (quoting *Powell*, 502 F. Supp. 3d at 898); *see also Schechter*, 2019 WL 3416902, at \*11 (collecting cases). Consequently, "[c]ourts summarily dismiss unjust enrichment claims where, as here, plaintiffs allege that they purchased products from third-party distributors." *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at \*30.

Plaintiffs argue that this Court previously rejected the "direct benefit" requirement in *Pontrelli v. MonaVie, Inc.*, No. 13-cv-4649 (WJM), 2014 WL 4105417, (D.N.J. Aug. 19, 2014). In that case, the Court allowed an unjust enrichment claim to proceed past the dismissal stage even though the plaintiff purchased the product at issue from a third-party distributor instead of from defendant, the manufacturer, directly. *Id.* at \*7. The defendant had set up a multi-level marketing scheme involving an elaborate network of distributors who not only sold the defendant's products to consumers, but also paid the defendant money to become a distributor and attempted to recruit other consumers to become distributors. *Id.* at \*3. The Court found that the defendant clearly benefitted directly from these tactics and thus should not be insulated from an unjust enrichment claim. *Id.* at \*7.

The circumstances in *Pontrelli* are readily distinguishable from the circumstances of this case. Moreover, this Court has expressly stated its preference for joining the majority of courts in this District in finding that a manufacturer is not liable for unjust enrichment if plaintiffs purchased the goods in question from a third-party. *Dimartino v. BMW of N. Am., LLC*, No. 15-8447 (WJM), 2016 WL 4260788, at \*7 (D.N.J. Aug. 11, 2016); *Fishman v. Gen. Elec. Co.*, No. 12-00585 (WJM), 2013 WL 1845615, at \*6 (D.N.J. Apr. 30, 2013). Accordingly, Plaintiffs' unjust enrichment claim is dismissed with prejudice.

### F. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 5)

Defendant seeks to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing on two grounds, one being that Defendant was not a party to the sale or lease of Plaintiffs' vehicles and thus Plaintiffs do not adequately allege that they share a direct contractual relationship with Defendant. Def. Br. at 32-33, ECF No. 19-1.

"The implied covenant of good faith and fair dealing is not a free-standing cause of action; such a covenant is an implied covenant *of a contract*," in the absence of which "there can be no breach of an implied covenant of good faith and fair dealing." *Power v. Bayonne Bd. of Educ.*, No. 16-5091 (KM), 2017 WL 1536221, at \*8 (D.N.J. Apr. 26, 2017) (emphasis in original) (internal quotation marks and citation omitted). Here, Plaintiff's Complaint alleges that "[e]ach contract of sale and lease agreement entered by Plaintiffs and Class

Members for the purchase or lease of the Class Vehicles contains an implied term requiring Defendant to adhere to a duty of good faith and fair dealing." FAC ¶ 166. But the Complaint contains no allegations from which the Court can infer that Defendant, as the manufacturer, was a party to the sale and lease agreements between Plaintiffs and the authorized dealers. *See* Greene, 2013 WL 5287314, at *4 (finding that plaintiff who leased his vehicle from a dealer could not state a claim for breach of the implied covenant of good faith and fair dealing against the vehicle manufacturer because the manufacturer was not a party to the lease agreement). Indeed, Plaintiffs concede that they "entered into a sales agreement with their dealer and simultaneously obtained a warranty from [Defendant]" in the form of a "Warranty Information booklet." Pls. Opp'n Br, at 23, ECF No. 20. To the extent that Plaintiffs' argument is that the implied covenant is attached to or arises from Defendant's express warranty, such argument renders Plaintiffs' breach of the implied covenant claim duplicative of their breach of express warranty claim, as both claims are premised on Defendant's alleged failure to fully and properly repair the InControl Defect. *Compare* FAC ¶ 123 *with* ¶ 126. *See* T.J. McDermott Transp. Co. v. Cummins, Inc., No. 14-04209 (WHW), 2015 WL 1119475, at *13 (D.N.J. Mar. 11, 2015) (dismissing as duplicative plaintiff's claim for breach of the implied covenant for good faith and fair dealing where the claim did not allege any basis that was different from the bases for the breach of express warranty claims). For these reasons, Plaintiffs have not stated a viable claim for breach of the implied covenant of good faith and fair dealing. The claim is dismissed without prejudice.

### G. Violations of State Consumer Protection Laws (Counts 6 through 11)

 **\*10**  Finally, Defendant argues that the state-law consumer protection claims must be dismissed because Plaintiffs have not adequately alleged that Defendant made any affirmative misrepresentations or omitted material facts when marketing and selling the Class Vehicles to consumers. Def. Br. at 5-19, ECF No. 19-1. Because Plaintiffs assert that their consumer protection claims are based solely upon omissions, the Court need not consider Defendant's misrepresentations arguments and will instead focus its analysis on the parties' omissions arguments.

#### 1. Plaintiff George's Claim Under the Michigan Consumer Protection Act (Count 9)

Defendant argues that Plaintiff George's claim under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. § 445.903, must be dismissed because it is barred by a statutory exception providing that the MCPA does not apply to transactions like vehicle sales, which are specifically authorized and regulated by law. Def. Br. at 19, ECF No. 19-1. Pursuant to recent district court decisions from the Eastern District of Michigan interpreting the statutory exception, the Court finds this argument to be persuasive and will dismiss, with prejudice, Plaintiff George's MCPA claim accordingly. *See* Gregorio v. Ford Motor Co., 522 F. Supp. 3d 264 (E.D. Mich. 2021) ("Based on the Michigan Court of Appeals' current interpretation of the MCPA, and that of courts in this District, this Court finds that Ford's motor vehicle sales to Plaintiffs are exempt from the MCPA."); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019) ("The general transaction in this case (i.e., the sale of a new car by a licensed dealer) is one specifically authorized and regulated by law; thus, it is exempt from the MCPA.").

#### 2. Plaintiffs Ferfecki, Ortiz, Jolly, and Vas's Claims Under the New Jersey Consumer Fraud Act, the Florida Deceptive and Unfair Trade Practices Act, the Georgia Fair Business Practices Act, and the New York Consumer Protection Act (Counts 6, 7, 8, 10, 11)

As to the remaining Plaintiffs, Defendant argues that their fraudulent omission claims under their home states' consumer protection laws must be dismissed because they fail to adequately allege that Defendant knew, at the time of sale, of the InControl Defect affecting the Class Vehicles. Def. Br. at 11-19, ECF No. 19-1.

Before turning to address Defendant's points on the pre-sale knowledge allegations, the Court notes, as an initial matter, that Plaintiffs' consumer protection claims sounding in fraud under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, and the Georgia Fair Business Practices Act ("GFBPA"), Ga. Code Ann. § 10-1-393, must meet the heightened pleading requirements

of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Lieberson*, 865 F. Supp. 2d at 538 ("NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)."); *Ace Tree Surgery, Inc. v. Terex Corp.*, No. 16-775, 2017 WL 1836307, at *3 (N.D. Ga. Feb. 21, 2017) (GFBPA is "subject to Rule 9(b)'s heightened pleading requirements"). There appears, however, to be a split of authority among federal courts as to whether claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.204(1), and the New York Consumer Protection Act ("NYCPA"), N.Y. Gen. Bus. Law § 349, are also subject to the heightened pleading requirements of Rule 9(b). *See Lewis v. Mercedes-Benz USA, LLC*, No. 19-81220, --- F. Supp. 3d ----, 2021 WL 1216897, at *29 (S.D. Fla. Mar. 30, 2021); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).

**\*11** Where the heightened pleading standard applies, Rule 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Within the context of fraudulent omission claims like the ones here, plaintiffs are not required to plead fraud as precisely as they would for a misrepresentation claim, *Skeen v. BMW of N. Am., LLC*, No. 13-1531 (WHW), 2014 WL 283628, at *8 (D.N.J. Jan. 24, 2014), but they are required to "plead a specific omission of a material fact and the defendant's knowledge of it." *Spera*, 2014 WL 1334256, at *7. Conclusory assertions of the defendant's knowledge will not suffice. *Id.* Thus, a plaintiff asserting fraudulent omission claims in the defective product context must plead sufficient allegations to show, among other things, that the manufacturer knew of the alleged defect before sale and failed to disclose those material facts to consumers. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013) (plaintiff was "required to show that Toyota knowingly, with the intent of inducing reliance, conceal[ed], suppress[ed], or omitt[ed]" the alleged defect); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018) (finding plaintiffs sufficiently pleaded fraudulent concealment and GFBPA claims where they alleged that Mercedes knew about the defect as early as 2008, denied the existence of it when confronted by consumers, and actively concealed it); *Matthews v. Am. Honda Motor Co.*, No. 12-60630, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value").

Here, Plaintiffs allege that Defendant knew about the InControl Defect prior to Plaintiffs purchasing or leasing their vehicles. FAC ¶ 59, 72. Plaintiffs rely on five different sources to establish Defendant's knowledge of the defect: (1) Defendant's issuance of multiple TSBs; (2) warranty claims data; (3) customer complaints to Defendant; (4) customer complaints to the NHTSA; (5) customer complaints posted in online forums; and (6) pre-launch testing data. *Id.* ¶¶ 61-88. Defendant dissects each of these sources individually, arguing that the allegations are either too generalized or detail issues with Class Vehicles that named Plaintiffs do not own. Def. Br. at 12-18, ECF No. 19-1. For instance, among Defendant's arguments is that the TSBs referenced in the Complaint all address the InControl Touch Pro system as opposed to the InControl Touch Pro Duo system, which is the system in Plaintiffs' vehicles. FAC ¶¶ 61-65. Plaintiffs have alleged, however, that the two systems have the same or substantially similar software. *Id.* ¶ 12. The Court agrees with Plaintiff that it is plausible that Defendant's knowledge of problems with the InControl Touch Pro system put it on notice of the same problems with the InControl Touch Pro Duo system. Pls. Opp'n Br. at 9, ECF No. 20.

Ultimately, the Courts finds, in line with its prior decisions in defective product cases based on a fraudulent omission theory, that when viewing Plaintiffs' allegations holistically, they have pleaded enough to give rise to a plausible inference that Defendant knew about the InControl Defect plaguing its vehicles. *See Kennedy v. Samsung Elecs. Am., Inc.*, No. 14-4987 (WJM), 2015 WL 2093938, at *4 (D.N.J. May 5, 2015); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 613 (D.N.J. 2014); *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 383 (D.N.J. 2014); *Greene v. BMW of N. Am.*, No. 11-04220 (WJM), 2014 WL 47940, at *3 (D.N.J. Jan. 7, 2014). Assuming for purposes of the instant motion that Plaintiffs' allegations are true, Defendant would have known about the InControl Defect because it had an active program to troubleshoot and log customer complaints about the defect; regularly compiled and analyzed records for warranty repairs performed at its network of dealerships; maintained an online portal on its website for reporting vehicle defects; worked closely with the NHTSA to track

and monitor complaints about its vehicles submitted through the NHTSA database; monitored online consumer forums as part of its "online reputation management" efforts, "now a standard business practice among most major companies"; and engaged in "extensive pre-launch testing of its vehicles," as is standard practice for automobile manufacturers. FAC ¶¶ 61, 67, 69, 72, 78, 86. Through these allegations, Plaintiffs have sufficiently pleaded Defendant had pre-sale knowledge of the InControl Defect. Plaintiffs Ferfecki, Ortiz, Jolly, and Vas's state consumer protection claims may therefore proceed.

### IV. CONCLUSION

 **\*12**  For the foregoing reasons, Defendant's motion to dismiss the FAC, ECF No. 19, is **GRANTED in part** and **DENIED in** part.

Defendant's motion is **GRANTED** as to the following claims: breach of express warranty as to Plaintiff George only (Count 1); breach of implied warranty as to Plaintiff Vas only (Count 2); unjust enrichment as to all Plaintiffs (Count 4); breach of the implied covenant of good faith and fair dealing as to all Plaintiffs (Count 5); and violation of the MCPA (Count 9).

These claims are **DISMISSED without prejudice**, except for the claims for unjust enrichment (Count 4) and violation of the MCPA (Count 9), for which amendment would be futile. These two claims are therefore **DISMISSED with prejudice**.

Defendant's motion to dismiss is **DENIED** as to the remaining claims: breach of express warranty as to Plaintiffs Ferfecki, Ortiz, Jolly, and Vas (Count 1); breach of implied warranty of merchantability as to Plaintiffs George, Ferfecki, Ortiz, and Jolly (Count 2); violation of the MMWA (Count 3); and violations of the state consumer protection laws (Counts 6, 7, 8, 10, 11). These claims may therefore proceed past the dismissal stage.

Plaintiffs are granted leave to amend the Complaint as to the claims dismissed without prejudice, and in conformity with this Opinion, within twenty days (20) of this Opinion's entry. An appropriate Order shall follow.

**All Citations**

Slip Copy, 2021 WL 5195788

### Footnotes

1  The Court is aware of a recent decision from this District dismissing the plaintiff's MMWA claim where he had not complied with the vehicle manufacturer's alternative dispute resolution procedure. *Schechter*, 2019 WL 3416902, at *15 (D.N.J. July 29, 2019), *reconsideration denied*, No. 18-13634 (FLW), 2020 WL 1528038 (D.N.J. Mar. 31, 2020). In that case, however, the plaintiff did not raise the affirmative defense argument in his opposition for the Court to consider. The Court proceeded to adjudicate the issue because, unlike here, "[p]laintiff's non-compliance with the required pre-suit dispute resolution procedure [was] clear from face of the FAC and from his own concession." *Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2020 WL 1528038, at *19, n.11 (D.N.J. Mar. 31, 2020).

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.